OPINION
{¶ 1} Defendant-Appellant, John Dunn, III ("Dunn"), appeals from a judgment of the Logan County Common Pleas Court, convicting him of rape and sentencing him to eight years of incarceration. Dunn contends that the evidence before the jury was insufficient to support his conviction. He also contends that the trial court incorrectly charged the jury as to the element of purposely. Finally, Dunn claims that the trial court's decision to impose consecutive sentences violated his right to have the jury determine facts essential to the punishment as established inBlakely v. Washington (2004), 124 S.Ct. 2531.
 {¶ 2} After reviewing the entire record, we find that a rational trier of fact could have found that the State proved all of the elements of rape beyond a reasonable doubt. Furthermore, we can not say that but for the trial court's instruction on purposely the outcome of Dunn's trial clearly would have been otherwise. With regard to Dunn's last assignment of error, we rely on the line of cases from this Court that have foundBlakely to be inapplicable to Ohio's sentencing scheme. Accordingly, all three of Dunn's assignments of error are overruled, and the judgment of the trial court is affirmed.
 {¶ 3} On March 2, 2004, the victim, C.T., went to the Mary Rutan Hospital in Bellefontaine, Ohio and reported that she had been raped the previous evening. C.T. was fifty-five years old at the time and mildly retarded. Doctors found multiple injuries on C.T.'s body including an abrasion on her abdomen and bruising on her shoulders, lower back, and the inside of her left thigh. Upon conducting a more thorough investigation, doctors also discovered multiple tears, both internally and externally, in C.T.'s vaginal area.
 {¶ 4} Consequently, the police were summoned to the hospital to conduct an investigation into C.T.'s claims. C.T. told police that the night before the alleged rape, C.T. and her Cousins, Pam Kindle ("Kindle") and Alice Predmore ("Alice"), had gone to Dunn's trailer in Bellefontaine, Ohio to drink beer. At the time, Alice was Dunn's girlfriend. Sometime after arriving at Dunn's trailer, Alice decided to leave in order to pickup a pizza. During Alice's absence, Kindle began to perform oral sex on Dunn. When Alice returned, she saw Kindle performing oral sex on Dunn. Consequently, Alice became enraged and got into an altercation with Dunn. After gathering up some of her belongings, Alice left the trailer.
 {¶ 5} After Alice left the trailer, Dunn grabbed C.T. and dragged her into his bedroom. He then proceeded to take C.T.'s clothes off and forcibly rape her by penetrating her vagina with his penis. Once Dunn had finished, C.T. got up and headed towards the bathroom. Dunn followed C.T. into the bathroom and pushed her up against the sink. He then forcibly penetrated her again. C.T. suffered numerous injuries as a result of the rape and was bleeding profusely. She attempted to stop the bleeding by stuffing toilet paper into her underwear, but the bathroom became covered in her blood.
 {¶ 6} C.T., Dunn, and Kindle were all intoxicated at this point, and C.T. had no way of leaving the trailer. Eventually, Alice returned to the trailer with two other people, Morgan Daniels ("Daniels") and Kevin Oyer ("Oyer"). Once more, Alice found Dunn engaged in sexual activity with Kindle. Alice again became enraged and another altercation ensued. While this second altercation was ongoing, C.T. approached Daniels and Oyer and told them that Dunn had hurt her. She then pulled down her pants and revealed a bloody groin area. Daniels and Oyer also saw blood covering the bathroom of the trailer.
 {¶ 7} Eventually, C.T. was taken back to her own home. Her boyfriend, Eric Fry ("Fry"), discovered that something was wrong with C.T. and took her to the hospital.
 {¶ 8} Police approached Dunn with C.T.'s accusations. Dunn admitted that he had sex with C.T., but claimed that it had been consensual. Police then searched Dunn's trailer and found a blood stained mattress. One of the blood stains was later determined to be C.T.'s.
 {¶ 9} Based on C.T.'s story and the physical evidence, the police arrested Dunn and charged him with one count of Rape in violation of R.C. 2907.02(A)(2). Dunn was also given a repeat violent offender specification pursuant to R.C. 2929.01(D)(D). Dunn pled not guilty, and a jury trial was conducted on the rape charge on November 9 and 10, 2004. After the jury returned a verdict of guilty, the trial court heard additional evidence on the issue of whether Dunn was a repeat violent offender. The jury found Dunn to be a repeat violent offender, and the matter was set for sentencing.
 {¶ 10} At the sentencing hearing, the trial court imposed a sentence of eight years and ordered the sentence to be served consecutively to the previous conviction Dunn had been on parole for at the time of the rape. Dunn appeals from this sentence, presenting the following assignments of error for our review.
 Assignment of Error I The jury erred when it returned a guilty verdict.
 Assignment of Error II The trial court incorrectly charged the jury as to the elementof purposely.
 Assignment of Error II The trial court's imposition of consecutive sentences was contrary tolaw.
 Assignment of Error I {¶ 11} In his first assignment of error, Dunn maintains that the evidence presented by the State was insufficient to support the jury's rape conviction. He claims that there was not enough evidence to prove that C.T. did not consent to sex with him.
 {¶ 12} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, recognized as superseded by state constitutional amendment on other grounds in State v. Smith (1997), 80 Ohio St.3d 89, 103. R.C.2907.02(A)(2) states that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
 {¶ 13} The evidence at trial showed that C.T. had suffered severe bruising and vaginal tears as a result of her sexual encounter with Dunn. Furthermore, the testimony of Daniels and Oyer established that C.T. had told them that Dunn had hurt her. Daniels and Oyer also testified that they had seen blood all over the bathroom of the trailer. There was also testimony that C.T.'s blood was found on Dunn's mattress, and the doctor who examined C.T. testified that her wounds were caused by a nonconsensual sexual encounter. Finally, C.T. herself testified that she had not wanted to have sex with Dunn.
 {¶ 14} Dunn's argument that there was insufficient evidence is based upon several out of court statements made by C.T. and her responses to his lawyer's questions on cross-examination. In two different tape recorded statements, C.T. stated that she had not been raped by Dunn. On cross-examination, C.T. replied affirmatively when asked if the sex had been consensual. Thus, Dunn claims that the evidence is insufficient to prove that he forced C.T. to have sex with him against her will. This is wrong for two reasons.
 {¶ 15} First, the issue of witness credibility is primarily an issue for the trier of fact because the trier of fact is in a better position to observe the demeanor of the witnesses and weigh their credibility.State v. Lawhorn, 3d Dist. Nos. 11-04-19, 11-04-20, 2005-Ohio-2776 at ¶ 14, citing State v. DeHass (1967), 10 Ohio St.2d 230, at paragraph one of the syllabus. Accordingly, the trier of fact must be given the appropriate deference with regard to credibility issues. Ardrey v.Ardrey, 3d Dist. No. 14-03-41, 2004-Ohio-2471, at ¶ 17. This Court must not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently clear that the fact finder lost its way. State v. Parks, 3d Dist. No. 15-03-16, 2004-Ohio-4023, at ¶ 13, citing State v. Twitty, 2nd Dist. No. 18749, 2002-Ohio-5595, at ¶ 114.
 {¶ 16} C.T. was a mildly retarded woman. Several witnesses, including Dunn's witnesses, testified that she could be easily misled. It was within the jury's discretion to consider her demeanor and the surrounding circumstances and decide whether to believe her statements that the sex was consensual or her statements that the sex was nonconsensual.
 {¶ 17} Second, even without C.T.'s testimony, there was ample evidence to support the theory that the sex had been nonconsensual. C.T. had suffered extensive bruising, vaginal tearing, and bleeding. Moreover, a doctor testified that, in his opinion, such injuries were the result of nonconsensual sex.
 {¶ 18} Based on the above, we find that a rational trier of fact could have found beyond a reasonable doubt that C.T. did not consent to sex with Dunn. Accordingly, Dunn's first assignment of error is overruled.
 Assignment of Error II {¶ 19} In his second assignment of error, Dunn asserts that the trial court gave an erroneous jury instruction concerning the element of purposely. He claims that the trial court should not have given both the "specific intent" definition of purpose and the "gist of the offense" definition of purpose.
 {¶ 20} R.C. 2901.22(A) provides that:
A person acts purposely when it is his specific intention to cause acertain result, or, when the gist of the offense is a prohibition againstconduct of a certain nature, regardless of what the offender intends toaccomplish thereby, it is his specific intention to engage in conduct ofthat nature. (Emphasis added). In addressing this statute, the Ohio Supreme Court has found that the bifurcated definition of purpose is intended to encompass both those crimes where the specific result must be intended ("specific intent") and those offenses where the act itself is all that must be intended ("gist of the offense"). State v. Wilkins
(1980), 64 Ohio St.2d 382, 386.
 {¶ 21} The trial court's instruction to the jury on the definition of purpose included both the specific intention portion of the definition of purpose and the gist of the offense portion of the definition. Dunn claims that this was error because the crime of rape as defined in R.C.2907.02(A)(2) requires a specific intent on the part of the criminal committing the act not just intent to commit the act of sex.
 {¶ 22} Crim.R. 30, in pertinent part, provides as follows:
On appeal, a party may not assign as error the giving or the failure togive any instructions unless the party objects before the jury retires toconsider its verdict, stating specifically the matter objected to and thegrounds of the objection. Opportunity shall be given to make theobjection out of the hearing of the jury.
 {¶ 23} Dunn was given an opportunity outside of the hearing of the jury to object to the jury instructions, but he declined. When a defendant fails to object to the jury instructions, he waives all but plain error. State v. Cunningham, 105 Ohio St.3d 197, 2004-Ohio-7007, at ¶ 56. "An erroneous jury instruction does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise." Id., citing State v. Underwood (1983), 3 Ohio St.3d 12, syllabus. In reviewing jury instructions, we must consider the specific charge at issue in the context of the entire charge, not in isolation.State v. Bailey, 8th Dist. No. 81498, 2003-Ohio-1834, at ¶ 51, citingState v. Thompson (1987), 33 Ohio St.3d 1, 13.
 {¶ 24} Looking at the trial court's entire jury instruction, it is clear that the jury had the specific intent definition of purpose along with the gist of the offense definition. As such, we can not say that the jury disregarded the specific intent definition and that the outcome of the trial would have been otherwise had the gist of the offense definition been excluded. See, Bailey at ¶ 50-56; State v. Oliver (March 29, 1993), 5th Dist. No. 92-CA-81. Furthermore, this Court has previously considered a very similar jury instruction in the context of a rape conviction and found that the trial court did not err by including both the specific intent and gist of the offense definitions of purposely in its instruction. State v. Martens, (1993), 90 Ohio App.3d 338, 349-350. Accordingly, Dunn's second assignment of error is overruled.
 Assignment of Error III {¶ 25} In his third assignment of error, Dunn claims that his consecutive sentences are unlawful under the United States Supreme Court's holding in Blakely v. Washington (2004), 124 S.Ct. 2531. We have previously held that the holding in Blakely does not apply to Ohio's sentencing scheme. State v. Trubee, 3d Dist. No. 9-03-65, 2005-Ohio-552, at ¶ 16-38. Therefore, Dunn's third assignment of error is overruled as well.
 {¶ 26} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 Bryant and Shaw, J.J., concur.