OPINION *Page 2 
{¶ 1} Defendant-Appellant Eric S. VanVoorhis appeals the November 9, 2007 Judgment Entry and Sentencing of the Common Pleas Court of Logan County, Ohio sentencing him to life in prison for each of seven counts (1-7) of Rape in violation of R.C. 2907.02(A)(1)(b), felonies of the first degree, nine years for each of three counts (8-10) of Rape in violation of R.C. 2907.02(A)(2), felonies of the first degree, six months for one count (11) of Pandering Sexually Oriented Matter Involving a Minor in violation of R.C. 2907.322(A)(5), a felony of the fourth degree, two years for one count (13) of Illegal Use of Minor in Nudity Oriented Material or Performance in violation of R.C. 2907.323(A)(1), a felony of the second degree, and six months for one count (14) of Illegal Use of Minor in Nudity Oriented Material or Performance in violation of R.C. 2907.323(A)(3), a felony of the fifth degree.[1]
 {¶ 2} This matter stems from allegations of abuse by the victim in this case, Justin Williams ("Justin") DOB 6/8/1988 against VanVoorhis. Justin testified that he met VanVoorhis on his last day of kindergarten when he went to stay at VanVoorhis' home. At that time VanVoorhis and Justin's grandmother, *Page 3 
Alice Walls ("Alice"), were living at VanVoorhis' home in Logan County, Ohio. Justin was living in an apartment complex in Indiana with his mother and siblings. Alice requested that the children come and visit her in the summer and stay at VanVoorhis' home. During this time Justin's father, Antony Williams ("Tony") was incarcerated.
 {¶ 3} Justin testified that he and his siblings spent summers at VanVoorhis' home every summer from the time he finished kindergarten until the summer after fourth grade. After fourth grade, Justin started fifth grade in the Indian Lake School District in Ohio, where his father lived. After Justin moved in with his father, he began seeing VanVoorhis on weekends and sometimes on holidays. Justin stated that he viewed VanVoorhis as a step grandfather of sorts.
 {¶ 4} Even after Alice and VanVoorhis ended their relationship, Justin and his brother, David Williams ("David") still visited VanVoorhis on weekends. VanVoorhis would take the boys out and buy them CD's, toys, and clothing. Justin testified that he was VanVoorhis' favorite and would often received more or nicer items than David when VanVoorhis took them shopping or bought them presents.
 {¶ 5} Justin testified that VanVoorhis started abusing him when he was five years old, shortly before his sixth birthday. When Justin and David would visit VanVoorhis, they would sleep on an air mattress on the floor in VanVoorhis' *Page 4 
bedroom. David remembers that he would occasionally wake up to see Justin sleeping in VanVoorhis' bed.
 {¶ 6} The abuse began when Justin first began staying with VanVoorhis, the summer after kindergarten. Justin remembers VanVoorhis pulling him up by the arm, so that he was up next to the bed. Then VanVoorhis removed Justin's underwear and as Justin described, "started touching me, and — you know, masturbating." (Tr.p. 182). After that first incident, Justin testified that the abuse occurred almost every night.
 {¶ 7} The abuse quickly progressed to oral sex. Justin testified that VanVoorhis would perform oral sex on him and then have Justin do the same. The oral sexual conduct also began occurring at age five. Justin estimates that this conduct would occur on a weekly basis over the summer and would usually occur at night. However, Justin testified that VanVoorhis would engage in sexual conduct with him at other times if no one else was around.
 {¶ 8} Because he was only five at the time the abuse began, Justin testified that he did not really understand what was occurring and did not know how to tell VanVoorhis to stop. Around age ten or eleven, VanVoorhis began having anal sex with Justin. Justin testified that the anal intercourse was painful, but that VanVoorhis kept Vaseline above his bed and used that as lubricant. The anal sex occurred less frequently than the other conduct, according to Justin. *Page 5 
 {¶ 9} Justin testified that he eventually wanted to stop around age seventeen, and that eventually the abuse did stop. When questioned, Justin stated that the oral sex occurred every year from when he was five in 1994 to when he turned fifteen in 2003. Justin also stated that from the time he was ten in 1998 to 2003 anal intercourse occurred during every one of those years. Although VanVoorhis was only charged until 2003 when Justin was fifteen years-old, Justin stated that the abuse continued until he was seventeen years of age.
 {¶ 10} In addition to the sexual conduct, VanVoorhis also filmed Justin stimulating himself. Justin remembers that somewhere between the ages of ten and twelve, VanVoorhis asked Justin to stimulate himself. VanVoorhis used a camera, identified at trial, to film this act which occurred on VanVoorhis' bed.
 {¶ 11} VanVoorhis also showed Justin pornography on his computer. Justin described it as "some kind of foreign pornography, little kids." (Tr.p. 189). VanVoorhis then told Justin that he "shouldn't tell anyone because of what they would do to him in prison." (Tr.p. 190).
 {¶ 12} When Justin was specifically asked why he did not stop going to VanVoorhis home, Justin stated that he "didn't really know how to make it stop, and I mean, there were certain time I didn't — I believed that he really did love me, and — in his own way, you know." (Tr.p. 191). Moreover, Justin stated that he never reported the abuse because he felt he should protect VanVoorhis. "I mean, *Page 6 
because I — I had grown attached to him, you know. Despite what age I was, sexual bond is a strong bond, and I was — I still really cared for him, you know." (Tr.p. 192).
 {¶ 13} Justin finally disclosed the abuse to his step-father, after the abuse had stopped. After Justin told his step-father of the abuse, he went to the police and made a report in Logan County. Officers with the Logan County Sherriff's Office had Justin wear a recording device and go to VanVoorhis' home to confront him regarding the abuse. This conversation was played for the jury, and in pertinent part, went as follows:
 Justin Williams: There's been some things bothering me about, you know, when I was younger.
 Eric VanVoorhis: Yeah?
 Justin Williams: And, you know, when you'd suck my dick and everything. I mean, like, I think it's cause a lot of problems for me, and
 Eric VanVoorhis: Like what?
 Justin Williams: Like — like I've gone through a withdrawn attitude. I can't talk to women, you know.
 Eric VanVoorhis: What are you going to do to get over it?
 * * *
 Eric VanVoorhis: So you just want to avoid me for — for that reason. *Page 7 
 Justin Williams: Right. I mean, I don't know. Why did you do it, though?
 Eric VanVoorhis: I don't know either. I really regret it, but I can't take it back. So what do we do, you know? I just — I don't want to think that I'll never see you again because of this whole thing.
 * * *
 Eric VanVoorhis: I know. Don't blame yourself, Justin. You know, if that's part of it. Don't feel like you did anything wrong because you didn't. You never have and you never will. You know, it's something — it's a demon that I have to live with for the rest of my life, and — and I just — sometimes I don't know whether I can go on from one day to the next, you know.
(Tr.p. 212-216).
 {¶ 14} After this conversation, on November 12, 2006, law enforcement executed a search warrant for the VanVoorhis residence. During the execution of the search warrant, which occurred several hours after VanVoorhis and Justin's conversation, officers seized VanVoorhis' computer which contained large amounts of child pornography.
 {¶ 15} Justin also testified that if he was staying with VanVoorhis and would wake early in the morning, he would see VanVoorhis on the computer looking at child pornography. David testified that if he would be staying at VanVoorhis' home and would wake early, he would also find VanVoorhis at the computer, but that VanVoorhis would quickly turn the computer screen away and tell him to go back to bed. *Page 8 
 {¶ 16} VanVoorhis also had Justin help him destroy some computer disks that contained child pornography. Justin stated that VanVoorhis became concerned about possessing the images after receiving a phone call. Subsequently, Justin states that he and VanVoorhis drove around, breaking the disks and throwing the pieces out the window.
 {¶ 17} The jury also heard the testimony of Detective Ryan Furlong of the Logan County Sheriff's Office. Detective Furlong testified that he used a computer program, Forensics Toolkit, to analyze the content of the computer seized from VanVoorhis' home.
 Q: And can you give us a summary of what was found?
 A: There was several images of children in different stages of undress engaged in sexual activity with other children and engaged in sexual activity with adults — or what appeared to be adults.
 Q: Okay. And were there boys and girls in these images?
 A: Mostly boys. There were only one or two images that had females.
 Q: Do you know approximately how many images were found on the computer?
 A: There were approximately — — there were over 1,700.
 Q: In that 1,700, would — would that include some — of just the whole variety that you mentioned; some in a nude state; some in semi dress.
 A: Correct. *Page 9 
 Q: And some in sex acts?
 A: Correct
 * * *
 Q: Were there any video files found on the computer?
 A: Yes, there were.
 Q: And what did — what did the video files contain?
 A: One contained two young boys engaging in sexual activity. A second one was a young man exposing himself, what appeared to be a webcam.
(Tr.p. 375-376).
 {¶ 18} Detective Furlong testified that David, Justin, and VanVoorhis all had accounts on VanVoorhis' computer. There was also a guest account, under which most of the pornography had been accessed. Several password-protected folders on the computer contained child pornography that was accessed through the guest account. In fact, most of the pornography contained on the hard drive was accessed through the guest account.
 {¶ 19} Detective Furlong testified that David and Justin both accessed pornography from their accounts. However, both David and Justin admitted to looking at pornography, but both stated that this activity appeared to be limited to adult websites, none involving children. This claim was corroborated by Furlong's testimony. *Page 10 
 {¶ 20} The jury also heard the testimony of Thomas J. Broadfoot, a computer forensics analyst with the Midwest Data Group. Broadfoot testified that numerous temporary internet files existed under the guest account which contained child pornography. Broadfoot also testified that several temporary internet files showing child pornography existed under VanVoorhis' account as well.
 {¶ 21} On January 9, 2007 VanVoorhis was indicted by the Logan County Grand Jury on twenty counts of Rape, two counts of Pandering Sexually Oriented Matter Involving a Minor, and two counts of Illegal Use of a Minor in Nudity-Oriented Material or Performance. VanVoorhis pled not guilty on January 12, 2007.
 {¶ 22} On July 20, 2007 VanVoorhis made a motion to dismiss the first sixteen counts of Rape in the indictment, arguing that these counts were barred by the statute of limitations. On August 10, 2007 the State filed a memorandum in response to VanVoorhis' motion to dismiss. The State agreed that the first ten counts of Rape were barred by the statute of limitations. On August 16, 2007 the trial court issued a Judgment Entry dismissing the first ten counts of Rape.
 {¶ 23} On August 27, 2007 VanVoorhis moved the trial court to severe the remaining counts of Rape from the two counts of Pandering Sexually Oriented Matter Involving a Minor and two counts of Illegal Use of a Minor in Nudity-Oriented *Page 11 
Material or Performance. The trial court denied this motion on September 14, 2007.
 {¶ 24} On September 4, 2007 VanVoorhis filed for leave to file a motion to suppress the results of the search of his home. Leave to file a motion to suppress was granted and a hearing was held on September 14, 2007. The crux of VanVoorhis' motion to suppress was that the affidavit did not present sufficient facts upon which to find probable cause to issue the search warrant. VanVoorhis' motion to suppress was denied on September 17, 2007.
 {¶ 25} The State moved to amend the indictment on September 12, 2007. This amendment essentially resulted in the re-numbering of the counts of the indictment. On September 14, 2007 the State filed an amended motion to amend the indictment, correcting an error in the previously amended indictment. This amended indictment was accepted by the trial court on September 18, 2007.
 {¶ 26} The indictment at the time of trial indicted VanVoorhis on seven counts (1-7) of Rape in violation of R.C. 2907.02(A)(1)(b),[2]
three counts (8-10) of Rape in violation of R.C. 2907.02(A)(2), one count (11) of Pandering Sexually Oriented Matter Involving a Minor in violation of R.C. 2907.322(A)(5), one count (12) of Pandering Sexually Oriented Matter Involving a Minor in violation of R.C. 2907.322(A)(6), one count (13) of Illegal use of a Minor in Nudity-Oriented *Page 12 
Material or Performance in violation of R.C. 2907.323(A)(1), and one count (14) of Illegal use of a Minor in Nudity-Oriented Material or Performance in violation of R.C. 2907.323(A)(3).
 {¶ 27} A jury trial commenced on September 18, 2007. On September 20, 2007 the jury found VanVoorhis guilty of seven counts (1-7) of Rape in violation of R.C. 2907.02(A)(1)(b) including an additional finding that VanVoorhis compelled the victim to submit by force or threat of force, three counts (8-10) of Rape in violation of R.C. 2907.02(A)(2), one count (11) of Pandering Sexually Oriented Matter Involving a Minor in violation of R.C. 2907.322(A)(5), one count (13) of Illegal use of a Minor in Nudity-Oriented Material or Performance in violation of R.C. 2907.323(A)(1), and one count (14) of Illegal use of a Minor in Nudity-Oriented Material or Performance in violation of R.C. 2907.323(A)(3). The jury found VanVoorhis not guilty of one count (12) of Pandering Sexually Oriented Matter Involving a Minor in violation of R.C. 2907.322(A)(6).
 {¶ 28} On November 9, 2007 VanVoorhis was sentenced to life in prison for each of seven counts (1-7) of Rape in violation of R.C. 2907.02(A)(1)(b), felonies of the first degree, 9 years for each of three counts (8-10) of Rape in violation of R.C. 2907.02(A)(2), felonies of the first degree, six months for one count (11) of Pandering Sexually Oriented Matter Involving a Minor in violation of R.C. 2907.322(A)(5), a felony of the fourth degree, two years for one count *Page 13 
(13) of Illegal Use of Minor in Nudity Oriented Material or Performance in violation of R.C. 2907.323(A)(1), a felony of the second degree, and six months for one count (14) of Illegal Use of Minor in Nudity Oriented Material or Performance in violation of R.C. 2907.323(A)(3), a felony of the fifth degree. VanVoorhis total sentence was two life terms plus two years in prison.
 {¶ 29} VanVoorhis now appeals asserting five assignments of error.
 ASSIGNMENT OF ERROR I THE INDICTMENT FAILED TO PROVIDE APPELLANT WITH SUFFICIENT NOTICE AS TO THE OFFENSES CONTAINED THEREIN.
 ASSIGNMENT OF ERROR II THE JURY'S VERDICTS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE.
 ASSIGNMENT OF ERROR III THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SEVER COUNTS XI-XIV OF THE AMENDED INDICTMENT.
 ASSIGNMENT OF ERROR IV THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION TO SUPPRESS.
 ASSIGNMENT OF ERROR V THE TRIAL COURT ERRED WHEN IT INSTRUCTED THE JURY AS TO THE ELEMENT OF "PURPOSE."
 First Assignment of Error {¶ 30} In his first assignment of error, VanVoorhis claims that he was deprived of his right to due process because the ten counts of Rape contained in *Page 14 
the indictment were not sufficiently specific to allow him to defend against each count. We note that in the present case, the first count of Rape in the amended indictment read as follows:
 Eric VanVoorhis, between the dates of January 1, 1994 and December 31, 1994, at the county of Logan aforesaid, engaged in sexual conduct with another who is not the spouse of the offender, when the other person is less than thirteen years of age, whether or not the offender knows the age of the other person, to wit: J. Williams (DOB 06/08/1998), in violation of Ohio Revised Code § 2907.02(A)(1)b (Under 145 v. S 31 effective 9/27/1993), Rape, an Aggravated felony of the first degree, punishable by life in prison in that the offender purposely compelled the victim to submit by force or threat of force.
The first seven counts were identical to the first count, except that each count specified a separate one year period.
 {¶ 31} Count eight of the amended indictment read as follows:
 Eric VanVoorhis, between the dates of January 1, 2001 and December 31, 2002, at the county of Logan aforesaid, engaged in sexual conduct with another when the offender purposely compelled the other person to submit by force or threat of force, to wit: J. Williams (DOB 06/08/1998), in violation of Ohio Revised Code § 2907.02(A)(2) (Under 145 v. H 32 effective 3/10/1998), Rape, a felony of the first degree.
Counts nine and ten read the same except they also specify a separate one year period. In total the indictment covers ten years of abuse.
 {¶ 32} As an initial matter, we note that VanVoorhis did not object to the alleged lack of specificity in the indictment. Moreover, although on August 20, 2007 the State filed a Bill of Particulars, VanVoorhis never requested a Bill of *Page 15 
Particulars in the present case, or requested a more specific Bill of Particulars after the original was filled.
 {¶ 33} Where a defendant fails to object to the form of the indictment before trial as required by Crim. R. 12(C), he waives all but plain error. State v. Frazier (1995), 73 Ohio St.3d 323, 332, 652 N.E.2d 1000,1995-Ohio-235; State v. Skatzes, 104 Ohio St.3d 195, 819 N.E.2d 215,2004-Ohio-6391.[3]
 {¶ 34} Pursuant to Crim. R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." State v. Barnes (2002), 94 Ohio St.3d 21, 27,759 N.E.2d 1240, 2002-Ohio-68. The Ohio Supreme Court, inBarnes, articulated a three part test for the finding of plain error.
 First, there must be an error, i.e., a deviation from a legal rule. Second, the error must be plain. To be "plain" within the meaning of Crim. R. 52(B), an error must be an "obvious" defect in the trial proceedings. Third, the error must have affected "substantial rights." We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.
Barnes, 94 Ohio St.3d at 27 (internal citations omitted).
 {¶ 35} Thus, "[o]nly extraordinary circumstances and the prevention of a miscarriage of justice warrant a finding of plain error." State v.Brown, 3rd Dist. *Page 16 
No. 8-02-09, 2002-Ohio-4755 citing State v. Long (1978),53 Ohio St.2d 91, 372 N.E.2d 804, at paragraph three of the syllabus.
 {¶ 36} VanVoorhis argues that the one year time periods contained in the indictment are insufficient to afford him notice of the charges. The United States Supreme Court has held that [a]n indictment is sufficient if it (1) contains the elements of the charged offense; (2) gives the defendant adequate notice of the charges; and, (3) protects the defendant against double jeopardy. Russell v. U.S. (1962), 369 U.S. 749,82 S.Ct. 1038, 8 L.Ed.2d 240.
 {¶ 37} We first note that the indictment against VanVoorhis contains the language of the Rape statute as contained in R.C. 2907.02. Each element is specifically included in the indictment. We next turn to whether the indictment "gives the defendant adequate notice of the charges." In arguing that the indictment did not give him adequate notice of the charges, VanVoorhis' argument relies heavily uponValentine v. Konteh (6th Cir. 2005), 395 F.3d 626.
 {¶ 38} Specifically, VanVoorhis argues that the ten counts of Rape were not separate and distinct enough as to compose ten separate counts. However, VanVoorhis' reliance on Valentine is misplaced. InValentine, the defendant was charged with twenty identically-worded counts of child rape and twenty identically-worded counts of felonious sexual penetration of a child. No attempt was made to differentiate any of the counts. At trial, the child victim was able to *Page 17 
testify to "about twenty" occasions of forced fellatio and "about fifteen" instances of vaginal penetration. No other evidence as to the number of instances was presented. Moreover, all of the charges inValentine were based on the same time frame of abuse. The jury convicted Valentine of all forty counts. Id. at 629.
 {¶ 39} The federal district court granted Valentine's writ of habeas corpus, finding that the identically-worded counts in the indictment deprived Valentine of his due process rights to notice of the charges against him. The Valentine court affirmed. The court noted that because the forty counts "were not anchored to forty distinguishable criminal offenses, Valentine had little ability to defend himself." Id. at 633. Valentine was convicted "for a generic pattern of abuse rather than for forty separate abusive incidents." Id. at 634.
 {¶ 40} In the case sub judice, VanVoorhis was not prosecuted for multiple undifferentiated criminal offenses or for a generic pattern of abuse. The indictment provided VanVoorhis with notice of the charges against him and differentiated the multiple counts by year and the age of the victim. In Ohio, it is well settled that cases involving the sexual abuse of children often cannot be charged with specificity with regard to the time of the abuse. In such cases, the State must set forth a time frame and charge a defendant for offenses occurring within that time frame. See State v. Lawrinson (1990), 49 Ohio St.3d 238,551 N.E.2d 1261; State v. Daniel (10th Dist. 1994),97 Ohio App.3d 548, 647 N.E.2d 174 ("It is well *Page 18 
established that, particularly in cases involving sexual misconduct with a child, the precise times and dates of the alleged offense or offenses oftentimes cannot be determined with specificity."); State v.Barnecut (5th Dist. 1988), 44 Ohio App.3d 149, 151,542 N.E.2d 353, 354-355; State v. Mundy (2nd Dist. 1994),99 Ohio App.3d 275, 650 N.E.2d 502.
 {¶ 41} We note that the indictment did not specifically refer to each one of hundreds of instances of sexual conduct allegedly occurring over a seven year period; and instead merely set forth a single representative count of sexual conduct for each year, differentiated by the year and age of the victim. However, the details of every instance need not be established in the indictment itself. Rather, it is enough that the bill of particulars provide sufficient detail to connect each charge to a specific incident and provide the defendant with adequate notice of the crimes charged. Valentine v. Konteh, 395 F.3d 626.
 {¶ 42} In the present case, the August 20, 2007 Bill of Particulars specifically detailed the sexual conduct at issue in the indictment. The bill of particulars provides that:
 J. Williams reports that the first time the abuse occurred was when he was five years old. He stated that he and his brother were sleeping in the Defendant's bedroom on the floor, when the Defendant pulled him up to his bed, pulled down his boxers and began fondling him. J. Williams stated that the following nights the Defendant would do a little bit more, until a few nights later, the Defendant began performing oral sex on him. *Page 19 J. Williams reports that Defendant had him masturbate the Defendant and also perform oral sex on him.
 * * *
 In addition to the oral sex and masturbation, J. Williams estimates that when he was 10 or 11 years old, the Defendant started to have anal intercourse with him. J. Williams stated that the anal intercourse wasn't as frequent as the oral sex and masturbation. J. Williams stated the Defendant had him perform anal intercourse on the Defendant a few times. J. Williams states that almost every time the Defendant performed a sex act on him he would perform the same sex act on the Defendant.
 {¶ 43} The indictment further provided that the abuse occurred every summer when Justin would visit VanVoorhis. Here the Bill of Particulars is specific enough to put VanVoorhis on notice of the conduct he is charged with, and must defend against.
 {¶ 44} Additionally, we find that the indictment in the present case protects VanVoorhis against double jeopardy. The indictment differentiates the counts based on time period. Moreover, the Bill of Particulars differentiates the counts based on conduct. We find this sufficient to protect VanVoorhis against a subsequent prosecution for this conduct. See State v. Crosky, 10th Dist. No. 06AP-655, 2008-Ohio-145 (the court found that defendant was protected against double jeopardy where the identical counts in the indictment alleged different time periods of sexual conduct); State v.Russell, 8th Dist. No. 88008, 2007-Ohio-2108, at ¶ 18. *Page 20 
 {¶ 45} Based on the foregoing, we cannot find that the indictment failed to satisfy the test as articulated in Russel v. U.S., supra.
Accordingly, VanVoorhis' first assignment of error is overruled.
 Second Assignment of Error {¶ 46} In his second assignment of error, VanVoorhis argues that the jury's verdicts were not supported by sufficient evidence. VanVoorhis more specifically argues that the State failed to produce fact specific evidence of each count of Rape and that the State failed to produce specific evidence as to who used the computer located in VanVoorhis' home to view child pornography.
 {¶ 47} Crim. R. 29(A) provides:
 The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.
 {¶ 48} A trial court should not grant a Crim. R. 29 motion for acquittal if "reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt * * *." State v. Bridgeman (1978), 55 Ohio St.2d 261,263, 381 N.E.2d 184. However, this Court has previously held that theBridgeman standard "must be viewed in light of the sufficiency of evidence test put forth in State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus." State v. Foster (Sept. 17, 1997), *Page 21 
Seneca App. No. 13-97-09. Thus, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks, 61 Ohio St.3d 259
at paragraph two of the syllabus.
 {¶ 49} VanVoorhis first argues that the State failed to prove the Rape counts in the indictment because it failed to elicit testimony on each specific time frame for which VanVoorhis was charged. However, it is well established that, particularly in cases involving sexual misconduct with a child, the precise times and dates of the alleged offense or offenses oftentimes cannot be determined with specificity. State v.Hemphill, 8th Dist. No. 85431, 2005-Ohio-3726 citing State v.Daniel (10th Dist. 1994), 97 Ohio App.3d 548, 556, 647 N.E.2d 174.
 {¶ 50} Justin specifically testified that the abuse began the summer after kindergarten, when he was five years old and about to turn six. This would have been 1994. Justin's mother, Rebecca Brewer, also testified that it was in 1994 that Justin and David began staying with VanVoorhis in the summer, which is when the abuse started. Alice Walls testified that she introduced her grandchildren to VanVoorhis in 1993, but that the grandchildren began visiting every summer from 1994-1997 while she was living with VanVoorhis.
 {¶ 51} Justin recalls this initial abuse as occurring that first summer, right before he turned six. Specifically, VanVoorhis pulled Justin, who was sleeping on *Page 22 
the floor, up to his bed by his arm. VanVoorhis then pulled down Justin's underwear and began fondling him.
 {¶ 52} Additionally, Justin testified that every summer he visited his grandmother and VanVoorhis, the abuse would continue. Therefore, we find that there was sufficient evidence for a reasonable jury to have convicted VanVoorhis of Counts one through four of the indictment finding VanVoorhis guilty of Rape during each year 1994-1997. SeeState v. Yaacov, 8th Dist No. 86674, 2006-Ohio-5321;State v. Lawwill, 8th Dist. No. 88251, 2007-Ohio-2627.
 {¶ 53} Turning next to the remaining rape charges, Justin stated that when he turned ten in 1998, VanVoorhis began to have anal sex with him. After Justin began fifth grade while living with his father, he visited VanVoorhis more frequently and recalled that the abuse continued under these changed circumstances.
 {¶ 54} Justin specifically testified that oral sexual conduct occurred every year from 1994-2003, and that anal sexual conduct occurred every year from 1998-2003. This additional testimony is corroborated by the recollections of Justin's parents who both remember Justin spending a significant portion of his free time during all of those years at VanVoorhis' home.
 {¶ 55} Justin specifically recalls that the anal sex occurred less frequently than the oral conduct. However, he testified that both of these kinds of abuse *Page 23 
occurred until he was seventeen years of age when he finally asked VanVoorhis to stop.
 {¶ 56} VanVoorhis also argues that there was insufficient evidence to convict him for several additional reasons. First, VanVoorhis argues that the victim did not report the abuse in the years it was occurring, therefore, the abuse must not have happened. This is directly related to VanVoorhis' argument that the victim had a motive to lie and was not credible. As previously noted, the victim's testimony and the testimony of others satisfied the elements of the offense.
 {¶ 57} The credibility of the victim, is a matter for the jury to resolve. State v. DeHass (1967), 10 Ohio St.2d 230, 231, 227 N.E.2d 212. Accordingly, the trier of fact must be given the appropriate deference with regard to credibility issues. Ardrey v. Ardrey, 3d Dist. No. 14-03-41, 2004-Ohio-2471, at ¶ 17. This Court must not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently clear that the finder of fact lost its way. State v. Parks, 3rd Dist. No. 15-03-16,2004-Ohio-4023, at ¶ 13, citing State v. Twitty, 2nd
Dist. No. 18749, 2002-Ohio-5595, at ¶ 114.
 {¶ 58} In the present case, the jury must have found the victim credible given that the jury found VanVoorhis guilty of thirteen of fourteen counts he was indicted on. However, the jury also found VanVoorhis not guilty of one of the *Page 24 
counts, indicating that the jury carefully considered the evidence before it, and weighed that evidence before making any determinations.
 {¶ 59} Moreover, although VanVoorhis relies heavily on a disagreement over a joint checking account between him and Justin, this disagreement was presented to the jury, but was not sufficient to convince the jury that Justin fabricated the allegations. Additionally, given the amount of child pornography on VanVoorhis computer, Justin need not fabricate an allegation to implicate VanVoorhis in criminal activity.
 {¶ 60} VanVoorhis also argues that there was no physical evidence of the abuse. This Court first recognizes that physical evidence of abuse is not a prerequisite to a conviction. In the present case, given that the victim was an adult when he finally disclosed the abuse, we are unsure why a physical exam would be necessary or warranted when he did not disclose any immediate physical injury.
 {¶ 61} In his final argument, VanVoorhis argues that he did not make any incriminating statements during his conversation with Justin on November 12, 2006. Initially, we would disagree with VanVoorhis' interpretation of his remarks in that conversation set forth earlier. However, even if it could be argued that VanVoorhis did not directly implicate himself, he also did not react to Justin's accusation that VanVoorhis would "suck my dick" the way one would expect a person who had not engaged in such conduct to react. One might expect an *Page 25 
innocent person to deny such an allegation. Moreover, there is no requirement that a defendant incriminate themselves with a direct statement in order for a criminal conviction to be sustained by sufficient evidence, making this argument, in fact, irrelevant.
 {¶ 62} Based on the foregoing, we find that the jury had before it sufficient evidence such that any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Accordingly, VanVoorhis second assignment of error is overruled.
 Third Assignment of Error {¶ 63} In his third assignment of error, VanVoorhis argues that the trial court erred in denying his motion to sever the first ten counts of the indictment from the final four counts. Crim. R. 8(A) permits a court to join multiple charges against a defendant if the charges "are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Moreover, "it is well settled that the law favors joinder." State v. Waddy (1992), 63 Ohio St.3d 424, 429, 588 N.E.2d 819. It is clear in the instant case that joinder was permissible under this rule, because the two child pornography charges are unquestionably of the "same or similar character," and arguably were part of a course of criminal conduct. *Page 26 
 {¶ 64} VanVoorhis argues that the rape charges are unrelated to the remaining charges and are unnecessarily inflammatory. A criminal defendant is permitted to seek severance of the charges under Crim. R. 14, which provides:
 If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires.
 {¶ 65} To prevail on a claim that the trial court erred in denying a motion to sever, the Ohio Supreme Court has determined that a defendant has the burden of demonstrating three facts.
 He must affirmatively demonstrate (1) that his rights were prejudiced, (2) that at the time of the motion to sever he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial, and (3) that given the information provided to the court, it abused its discretion in refusing to separate the charges for trial.
State v. Schaim 65 Ohio St.3d 51, 600 N.E.2d 661, 1992-Ohio-31citing State v. Torres (1981), 66 Ohio St.2d 340, 421 N.E.2d 1288 at syllabus. We note that [a]n abuse of discretion implies that the trial court's decision was unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 66} When a defendant claims that he was prejudiced by the joinder of multiple offenses, a court must determine (1) whether evidence of the other crimes *Page 27 
would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct.Schaim, 65 Ohio St. 3d at 59 citing State v. Hamblin (1988),37 Ohio St.3d 153, 158-159, 524 N.E.2d 476, 481-482. Moreover, "[i]f the evidence of other crimes would be admissible at separate trials, any `prejudice that might result from the jury's hearing the evidence of the other crime in a joint trial would be no different from that possible in separate trials,' and a court need not inquire further."Schaim, 65 Ohio St. 3d at 59 quoting Drew v. United States
(C.A.D.C. 1964), 331 F.2d 85, 90.; see also State v. Andrews, 3rd Dist. No. 1-05-70, 2006-Ohio-3764.
 {¶ 67} On August 27, 2007 VanVoorhis filed a motion for relief from prejudicial joinder. In denying VanVoorhis' motion, the trial court found that as follows:
 [T]he Court does believe the cases can be tried together in that the evidence is direct and uncomplicated. The Court believes the jury is capable of segregating the proof on each charge and the Court will give special instructions to the jury that they must find evidence beyond a reasonable doubt as to each individual charge and because the Defendant did one act, there should be no inference that he did the other act.
We note that the trial court also did not find that evidence of one crime would be admissible at the trial of the other. We disagree.
 {¶ 68} Justin, the same minor VanVoorhis was convicted of raping, was also the minor to whom he showed child pornography. Moreover, Justin not only *Page 28 
observed VanVoorhis viewing child pornography, but also helped VanVoorhis destroy multiple compact discs he believed contained child pornography. It is therefore highly unlikely that the child pornography charges could be tried without introducing some evidence of the Rape charges to explain the situation between VanVoorhis and Justin to show why Justin helped VanVoorhis destroy the child pornography on the previous occasion.
 {¶ 69} Additionally, Justin's testimony was necessary to identify VanVoorhis as the person downloading and viewing the child pornography found on his computer in the early hours of the morning. See alsoState v. Purkhiser, 2nd Dist. No. 2005 CA 34,2006-Ohio-4014; see also State v. Wagner, 5th Dist. No. 03 CA 82, 2004-Ohio-3941 (holding that severance was inappropriate where other acts showed defendant's modus operandi that defendant was the perpetrator). It is likely that Justin's testimony that VanVoorhis showed him child pornography involving children would be a crucial component in a severed trial of the child pornography charges. Moreover, evidence of the rapes would likely be admissible to explain why Justin did not disclose that VanVoorhis had shown him child pornography.
 {¶ 70} Moreover, in the reverse situation in which evidence of the child pornography charges would be admissible at the trial on the rape counts, the child *Page 29 
pornography related evidence would be admissible under Evid. R. 404(B), which provides:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 {¶ 71} In a similar case, the Fifth District Court of Appeals examined a set of similar charges, where a defendant was charged with raping his granddaughter, as well as two counts of gross sexual imposition, five counts of disseminating matter harmful to juveniles, twenty counts of pandering obscenity involving a minor, seven counts of pandering sexually oriented material involving a minor and twenty counts of illegal use of a minor in nudity-oriented material. State v.Eichorn, 5th Dist. No. 02 CA 953, 2003-Ohio-3415.
 {¶ 72} On appeal, the Eichorn court found that:
 As to the sex offense charges, the computer evidence would be admissible to show appellant's motive, intent, scheme or plan in committing the sexual abuse against his granddaughter and her friend. This is based upon the fact that the exhibits admitted into evidence clearly established they were gathered and viewed by someone interested in child pornography.
 As to the obscenity-related charges, the testimony of appellant's granddaughter and her friend would have been admissible to prove the identity of the person viewing the child pornography. This testimony was relevant since appellant was accused of performing the same type of sexual behavior displayed in the exhibits. *Page 30 
State v. Eichorn, 2003-Ohio-3415 at ¶ 33-¶ 34.
 {¶ 73} In Eichorn, the trial court found that evidence introduced to prove each set of offenses would have been admissible in the trial of the other offense to show motive, intent, scheme or plan. We find the same. Here, the child pornography found on VanVoorhis computer was similar in nature to the sexual acts he committed with Justin Williams. All of the 1,700 images, except two, exclusively involved men and boys engaged in both oral and anal intercourse. This was the same type of sexual conduct VanVoorhis performed with Justin.
 {¶ 74} Accordingly, we overrule VanVoorhis third assignment of error.
 Fourth Assignment of Error {¶ 75} In his fourth assignment of error, VanVoorhis argues that the trial court erred in overruling his motion to suppress. VanVoorhis specifically contends that the information contained in the affidavit supporting the search warrant was stale and also that the information failed to establish probable cause.
 {¶ 76} When a trial court considers a motion to suppress, it must make both factual and legal determinations. State v. Jones, 9th Dist. No. 20810, 2002-Ohio-1109 citing Ornelas v. U.S. (1996), 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911, 920. Moreover, when we review a trial court's decision that evidence arising out of a challenged seizure should not be suppressed we apply the law,de novo, to the facts as determined by the trial court. Id. At a suppression hearing, the *Page 31 
trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. State v. Carter (1995), 72 Ohio St.3d 545, 552,651 N.E.2d 965, 1995-Ohio-104; State v. Mills (1992), 62 Ohio St.3d 357, 366,582 N.E.2d 972.
 {¶ 77} Furthermore, when reviewing a trial court's decision on a motion to suppress, an appellate court must uphold the trial court's findings of fact if they are supported by competent, credible evidence.State v. Dunlap (1995), 73 Ohio St.3d 308, 314, 652 N.E.2d 988,1995-Ohio-243. We must defer to "the trial court's findings of fact and rely on its ability to evaluate the credibility of witnesses[,]" and then independently review whether the trial court applied the correct legal standard. State v. Anderson (1995), 100 Ohio App.3d 688, 691,654 N.E.2d 1034.
 {¶ 78} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures." Accordingly, the State is prohibited from making unreasonable intrusions into areas where people have legitimate expectations of privacy without a search warrant. United States v. Chadwick (1977), 433 U.S. 1, 7, 97 S.Ct. 2476,53 L.Ed.2d 538, overruled on other grounds in California v. Acevedo
(1991), 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619. *Page 32 
 {¶ 79} When "reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by [a judge or] magistrate [under the totality of the circumstances analysis ofGates], neither a trial court nor an appellate court should substitute its judgment for that of the judge or magistrate by conducting a denovo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant."State v. Bressler, 3rd Dist. No. 15-05-13, 2006-Ohio-611
at ¶ 13; State v. George, 45 Ohio St.3d 325, 544, N.E.2d 640;Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527. Rather,
 the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant.
George, 45 Ohio St.3d 325 at syllabus. Further, it is important to note that, probable cause exists when a reasonably prudent person would believe that there is a fair probability that the place to be searched contains evidence of a crime. Gates, 462 U.S. 213.
 {¶ 80} In the present case, VanVoorhis argues the information contained in the affidavit supporting the search warrant was stale. However, the warrant contained numerous pieces of information which would cure any potential *Page 33 
problems with staleness. In establishing probable cause, the warrant provided that the detective had a lengthy history of employment in law enforcement as well as specific training in sexual abuse cases.
 {¶ 81} With respect to the timeliness of information relied upon in a search warrant affidavit, there is no specific time limit indicating when information becomes stale as a matter of law. See State v.Schmitz (Mar. 1, 1996), 6th Dist. No. S-95-031. Instead, the relevant determination is whether there are sufficient facts alleged in the affidavit to justify a finding that contraband is probably on the premises to be searched. Id. Ohio courts have recognized that the continuing nature of sexual offenses involving minors often justifies a finding of probable cause where the information supplied in an affidavit identifies conduct that occurred several months prior to the warrant's issuance. See State v. Rogers, 12th Dist. No. 2006-03-055, 2007-Ohio-1890; State v. Thompson (C.P. 2000),110 Ohio Misc.2d 139, 145-146, 745 N.E.2d 1159; State v. Young (1988),37 Ohio St.3d 249, 257, 525 N.E.2d 1363.
 {¶ 82} This affidavit in support of the warrant in this case explained the enduring nature of pornography, stating:
 Based upon this investigation I have reason to believe that Eric S. VanVoorhis collects sexually explicit materials consisting of photographs, magazines, motion pictures, videos, tapes, books, slides and computer images depicting juveniles which he uses for his own sexual gratification and fantasy. Pedophiles rarely dispose of their sexually explicit materials, including *Page 34 correspondence they receive from others with similar interests. It is common for pedophiles to keep the names of the children they are involved with and to maintain a diary of their sexual encounters with or fantasies involving children. Depending upon the resources available, this diary can be contained in notebooks, journals, on audio tapes, video tapes, undeveloped film or a home computer. Pedophiles are known to collect books, magazines, newspapers and other writings on the subject of sexual activities with children and adults along with sexual aids, artifacts, statues, paintings or other media depicting children as sexual objects. These people obtain, collect and maintain photographs of children ranging from fully clothed to states of nudity.
 {¶ 83} Detective Mike Brugler, who completed the affidavit supporting the search warrant further stated that he had extensive training in sex crimes, and determined that he believed VanVoorhis to be a pedophile based on the following information:
 On November 7, 2006, an eighteen-year-old male victim, Justin Williams, came to my office and disclosed that Eric S. VanVoorhis had sexually abused him from the age of five to the approximate age of fifteen. Justin Williams stated that last summer he helped Eric S. VanVoorhis get rid of some child pornography on CD-ROM disks at the 208 Midriver premises more specifically described above. Justin Williams reports that he is aware of other child pornography that Eric VanVoorhis had that wasn't destroyed.
 On November 7, 2006, a thirty one-year-old male victim, Jeremy VanVoorhis, also gave a statement reporting that Eric S. VanVoorhis had sexually abused him from age seven to the approximate age fifteen. Jeremy reports that he was shown pornography by Eric S. VanVoorhis, and that Eric S. VanVoorhis took nude photographs of him. *Page 35 
 {¶ 84} Detective Brugler concluded that based upon his training and experience as a law enforcement officer, it was his belief that evidence of child sex abuse and child pornography would be located in the home.
 {¶ 85} In considering VanVoorhis motion to suppress, the trial court found that
 given the officer's training and his belief based upon his training and experience that pedophiles collect and keep pornography and other materials for sexual fantasies, the Court finds that there is sufficient evidence to create probable cause that the objects requested in the search warrant were in the Defendant's home or the Defendant's vehicle.
 {¶ 86} We agree with the trial court's determination that sufficient facts were alleged in the affidavit to justify a finding that contraband was probably on the premises to be searched. Having found that the issuing judge had a substantial basis for determining that probable cause existed to search VanVoorhis' home, VanVoorhis fourth assignment of error is overruled.
 Fifth Assignment of Error {¶ 87} In his fifth assignment of error, VanVoorhis asserts that the trial court gave an erroneous jury instruction concerning the element of purpose. He claims that the trial court should not have given the "gist of the offense" alternative in the definition of purpose. In reviewing jury instructions upon appeal, we must examine the specific charge at issue in the context of the entire charge, not in isolation. State v.Thompson (1987), 33 Ohio St.3d 1, 13, *Page 36 514 N.E.2d 407. Jury instructions are within the trial court's discretion, which we will not disturb absent an abuse of that discretion. State v.Guster (1981), 66 Ohio St.2d 266, 271, 421 N.E.2d 157. We note that [a]n abuse of discretion implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 88} Specifically, the trial court instructed the jury that:
 You will determine whether the State proved beyond a reasonable doubt that the defendant purposely compelled the victim to submit by force or threat of force.
 A person acts purposely when it's his specific intention to create a certain result or when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intended to accomplish thereby, it is his specific intention to engage in conduct of that nature.
 Compel means to force or drive, especially to a course of action, to secure or bring about by force or power.
(Tr.p. 553).
 {¶ 89} 2901.22 (A) provides:
 A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.
 {¶ 90} In addressing this statute, the Ohio Supreme Court has found that the bifurcated definition of purpose is intended to encompass both those crimes where the specific result must be intended ("specific intent") and those offenses where the *Page 37 
act itself is all that must be intended ("gist of the offense").State v. Wilkins (1980), 64 Ohio St.2d 382, 386, 415 N.E.2d 303.
 {¶ 91} Here, VanVoorhis asserts that the trial court should not have provided the second alternative definition to the jury because it eliminates the requirement that the defendant have the specific intent to commit the offense. This Court has previously addressed similar claims. See State v. Martens (1993), 90 Ohio App.3d 338, 629 N.E.2d 462. In Martens, this Court held as follows:
 We do not find the instruction to be erroneous. R.C. 2907.02(A)(2) and 2907.12(A)(2) require the offender to have the specific intent to purposely compel the victim to submit by force or threat of force. * * * The instruction was appropriate and actually benefitted appellant by requiring the jury to find that he specifically intended to force the victim to submit. When read as a whole, the court's instructions indicate that the jury had to find that appellant intended to commit the offenses with "a conscious objective of engaging in specific conduct" and that appellant intentionally committed the prohibited acts. Thus, the court properly informed the jury that it had to find that appellant intended to commit the act with force.
Martens, 90 Ohio App.3d at 350. See also State v. Dunn, 3rd Dist. No. 8-05-03, 2005-Ohio-3762; State v.Bailey, 8th Dist. No. 81498, 2003-Ohio-1834; State v.Johnson, 112 Ohio St.3d 210, 858 N.E.2d 1144, 2006-Ohio-6404.
 {¶ 92} In the present case, we find that the same rationale can be followed. Here the jury was given the full instruction of purposely as contained in R.C. 2901.22. When the instructions are read as a whole, including the definition of compel, we find that VanVoorhis may have benefited from the language of the *Page 38 
instructions. As in Martens, the instructions in the present case required the jury to specifically find that VanVoorhis compelled the victim to submit. We cannot say, with respect to instructing on the definition of purpose, that the trial court abused its discretion. Based on the foregoing, VanVoorhis' fifth assignment of error is overruled.
 {¶ 93} Accordingly, the November 9, 2007 Judgment Entry and Sentencing of the Common Pleas Court of Logan County, Ohio is affirmed.
Judgment Affirmed.
 WILLAMOWSKI and ROGERS, J.J., concur.
[1] The trial court ordered that Counts 1, 3, 5, 7, and 9 shall be served concurrently, but consecutive to Counts 2, 4, 6, 8, and 10. Moreover, Counts 2, 4, 6, 8, and 10 shall be served concurrently, but consecutively to counts 1, 3, 5, 7, and 9. Counts 11, 13, and 14 shall be served concurrently but consecutively to Counts 1 through 10. Overall, VanVoorhis was sentenced to two life terms in prison plus two years.
[2] Each of the first seven counts of Rape contained additional penalty language that VanVoorhis compelled the victim to submit by force or treat of force and that the victim was less than thirteen years of age.
[3] We note that these cases were decided under a prior version of Crim. R. 12, citing specifically to Crim. R. 12(B)(2). However Crim. R. 12(C)(2) now contains a substantially similar provision. *Page 1