[Cite as *State v. Thomas*, 2012-Ohio-5577.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,               CASE NO. 1-11-25

      v.

GARY E. THOMAS,                    O P I N I O N

      DEFENDANT-APPELLANT.

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                CASE NO. 1-11-26

      v.

GARY E. THOMAS,                    O P I N I O N

      DEFENDANT-APPELLANT.

Appeals from Allen County Common Pleas Court
Trial Court Nos. CR2011 0064 and CR2010 0241

Judgments Affirmed

Date of Decision:   December 3, 2012

Case No. 1-11-25 and 1-11-26

**APPEARANCES:**

*James H. Banks* **for Appellant**

*Jana E. Emerick* **for Appellee**

**WILLAMOWSKI, J**.

{¶1} Defendant-Appellant, Gary E. Thomas ("Thomas" or "Appellant"), appeals the judgmentmof the Allen County Court of Common Pleas, sentencing him to prison after a jury found him guilty of multiple counts of trafficking in crack cocaine and other related offenses. On appeal, Thomas contends that: the trial court erred in denying his motion to suppress; he was unduly prejudiced by the consolidation of two cases for trial; the evidence does not support his conviction on some of the counts; the trial court erred in admitting hearsay and in other rulings; and, the sentence consisting of maximum, consecutive sentences was contrary to law. For the reasons set forth below, the judgment is affirmed.

{¶2} In January of 2009, officers from the West Central Ohio Crime Task Force (WCOCTF) received information that Thomas was selling crack cocaine. They were able to cultivate an informant and buy crack cocaine from Thomas multiple times. Because of the amount of crack that Thomas was selling, officers considered him to be a large-scale dealer and they began to perform additional surveillance on Thomas. A second informant advised the officers of an upcoming

drug shipment that Thomas was due to receive. Officers obtained search warrants for a storage unit Thomas used, and discovered 720.3 grams of cocaine, $20,945 in cash and a 9mm Lugar inside the storage unit, as well as paperwork belonging to Thomas. After discovering this contraband, additional search warrants were obtained for several of the residences that Thomas had been observed using. Additional amounts of cocaine, cash and another weapon were found.

{¶3} On September 16, 2010, the Allen County Grand Jury returned an eight-count indictment against Thomas in case number CR2010 0241 ("the 2010 case" or "the first case"). He was charged as follows: count one: trafficking in crack cocaine (25-100 grams), in violation of R.C. 2925.03(A)(1) & (C)(4)(f), a felony of the first degree; counts two, three and four: trafficking in crack cocaine (10-25 grams), in violation of R.C. 2925.03(A) & (C)(4)(e), felonies of the second degree; count five: possession of cocaine (500-1000 grams), a felony of the first degree; counts six and nine: having a weapon while under disability, felonies of the third degree; count seven: possession of cocaine (25-100 grams), a felony of the third degree; count eight: possession of crack cocaine (25-100 grams), a

felony of the first degree.[1]

{¶4}   Thomas was arraigned in September of 2010.  He entered not-guilty pleas to all of the counts and was released on bond.  On January 20, 2011, the trial court revoked Thomas' bond after Thomas was arrested on a new allegation of trafficking in crack cocaine.  Various pre-trial motions were filed by Thomas, including a motion to suppress.  The trial court denied the motion to suppress, after holding a hearing on the matter.

{¶5}   On February 17, 2011, the Allen County Grand Jury returned a new indictment against Thomas, in case number CR2011 0064 ("the 2011 case" or "the second case"), wherein he was charged as follows:  count one:  trafficking in crack cocaine (25-100 grams), with a school specification, in violation of R.C. 2925.03(A)(1) & (C)(4)(f), a felony of the first degree and with a forfeiture specification alleging that $6,532 was a proceed of criminal activity;[2] and count two:  engaging in a pattern of corrupt activity, in violation of R.C. 2923.32(A)(1) & (B)(1), a felony of the first degree.

{¶6}   Thomas also entered not-guilty pleas to the counts in the 2011 case. Additional pre-trial motions were filed, including a motion by the State to

---

[1]Several of the counts also contained a forfeiture specification, alleging that certain items were used in the transaction or were a proceed of the criminal activity.   Counts one, two, three and four had a forfeiture specification for a 2006 Dodge Charger, but this specification was dismissed when the State amended the indictment prior to submission of the case to the jury.  Count five had a forfeiture specification for $20,945 in U.S. currency; and Counts seven and eight had a forfeiture specification for $16,110 in U.S. currency.

[2] Prior to submission to the jury, the State amended this count to reduce the amount of crack cocaine to an amount equal to or exceeding ten grams but not exceeding twenty-five grams, and it dismissed the specification for being in the vicinity of a school.

consolidate the two indictments for trial. The trial court granted the motion to consolidate and a jury trial was held starting on April 19, 2011.

{¶7} After four days of testimony, the jury convicted Thomas on all counts and all specifications except for count one of the second case. On count one of the second case, the jury convicted Thomas of trafficking in crack cocaine but with no agreement as to the amount, making the offense a felony of the fifth degree.

{¶8} The trial court then immediately proceeded to sentence Thomas on the various convictions, with sentences ranging from twelve months to ten years. All sentences were to be served consecutively to each other for an aggregate total of seventy-three years in prison, of which fifty-two years were mandatory. It is from this judgment that Thomas appeals, raising the following five assignments of error.

### First Assignment of Error

**The trial court erred in denying [Thomas'] motion to suppress evidence.**

### Second Assignment of Error

**[Thomas] was unduly prejudiced by the consolidation of the cases for trial such that his convictions must be reversed.**

**Third Assignment of Error**

**The evidence at trial does not support a conviction on Counts V and VII of the Indictment as to the items found in the storage unit.**

**Fourth Assignment of Error**

**The trial court's rulings at trial regarding hearsay, confidential informants, jury instructions and forfeiture substantially prejudiced [Thomas] such that his convictions must be reversed.**

**Fifth Assignment of Error**

**The trial court erred in convicting and sentencing [Thomas].**

*First Assignment of Error*

{¶9} Thomas argues that the trial court erred in denying the motion to suppress, claiming that there was no probable cause for issuance of a search warrant for the storage unit. Thomas contends that the information the investigator gave to the judge in order to obtain the warrant was "false or unsupported by any evidence," so there can be no good faith exception to the probable cause requirement. (Appellant's Brief, p. 16.) Because Thomas contends that this initial search was invalid, he asserts that the State should not have been permitted to utilize "the fruits of the poisonous tree" to obtain the warrants for the other locations, and therefore, all evidence resulting from these searches should have been suppressed.

{¶10} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution guarantee "[t]he right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures." Accordingly, the State is prohibited from making unreasonable intrusions into areas where people have legitimate expectations of privacy without a search warrant. *United States v. Chadwick* (1977), 433 U.S. 1, 7, 97 S.Ct. 2476, 53 L.Ed.2d 538, overruled on other grounds in *California v. Acevedo* (1991), 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619.

{¶11} For a search or seizure to be reasonable under the Fourth Amendment, it must be based upon probable cause and executed pursuant to a warrant. *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585; *State v. Brown* (1992), 63 Ohio St.3d 349, 350, 588 N.E.2d 113, 114. This requires a two-step analysis. *State v. Moore*, 90 Ohio St.3d 47, 49, 2000-Ohio-10, 734 N.E.2d 804. First, there must be probable cause. If probable cause exists, then a search warrant must be obtained unless an exception to the warrant requirement applies. *Id.* If the state fails to satisfy either step, the evidence seized in the unreasonable search must be suppressed. *Id.*; *Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081.

{¶12} When a trial court considers a motion to suppress evidence obtained through the use of a search warrant, it must make both factual and legal

determinations. *State v. Voorhis*, 3d Dist. No. 8-07-23, 2008-Ohio-3224, ¶ 76, citing *Ornelas v. U.S.* (1996), 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911, 920. When an appellate court reviews a trial court's decision on a motion to suppress, we apply the law, de novo, to the facts as determined by the trial court. *Id.* At a suppression hearing, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Carter* (1995), 72 Ohio St.3d 545, 552, 651 N.E.2d 965, 1995-Ohio-104; *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. An appellate court must uphold the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Dunlap* (1995), 73 Ohio St.3d 308, 314, 652 N.E.2d 988, 1995-Ohio-243. We must defer to "the trial court's findings of fact and rely on its ability to evaluate the credibility of witnesses[,]" and then independently review whether the trial court applied the correct legal standard. *State v. Anderson* (1995), 100 Ohio App.3d 688, 691, 654 N.E.2d 1034.

{¶13} When "reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a [judge or] magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the judge or magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the

search warrant." *State v. Bressler*, 3rd Dist. No. 15-05-13, 2006-Ohio-611 at ¶13; *State v. George* (1989), 45 Ohio St.3d 325, 544, 544 N.E.2d 640, N.E.2d 640; *Illinois v. Gates* (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527. Rather, the duty of a reviewing court is simply to ensure that the judge or magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the judge's or magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant. *George*, 45 Ohio St.3d 325, 544 N.E.2d 640, at the syllabus. Probable cause exists when a reasonably prudent person would believe that there is a fair probability that the place to be searched contains evidence of a crime. *Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527. In determining whether probable cause exists in order to issue a warrant, judges are entitled to draw common sense conclusions about human behavior. *Texas v. Brown* (1983), 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed 2d 502.

{¶14} Thomas' argument that the search warrant was issued based upon "stale" information is not accurate. Although some of the reasons given for the search warrant were from prior years, they were part of a continuing and ongoing investigation of Thomas. Furthermore, the information from the confidential informant was received just a few days earlier and Investigator Johnson's

observation of Thomas at the storage unit occurred the same day the warrant was issued.

**{¶15}** The trial court heard testimony from Investigator Johnson, and Judge Warren (who issued the search warrants) that there was probable cause for this warrant because (1) there had been a long-term investigation of Thomas; (2) there was information that he was a "middle to upper level cocaine dealer"; (3) Thomas was observed at a storage facility by another investigator in 2009 (although it was a different facility); (4) investigators had information from a confidential informant that a drug shipment would be coming to Lima very soon; and, (5) Investigator Johnson saw Thomas placing a small package from his trunk into the storage unit on the day that the search warrant was requested. Based on the testimony at the hearing, the affidavits utilized to obtain the search warrants, and the other exhibits and evidence, the trial court found that there was no evidence that Judge Warren was misled by information in an affidavit that Investigator Johnson knew was false, nor was there any evidence Judge Warren was not neutral and detached or that he had abandoned his judicial role. (Feb. 7, 2011 J.E. on Motion to Suppress, p. 8, 10.)

**{¶16}** The argument that there was no nexus between the places searched and Thomas' criminal activity also fails. The relevant question is whether or not the issuing judge had a substantial basis for concluding that there was a fair

probability that contraband or evidence of a crime will be found at the place to be searched. *Illinois v. Gates*, supra, at 238. It is not necessary that a crime have been committed at the location; just that evidence of a crime may potentially be found at the location.

{¶17} We do not find any error in the trial court's denial of the motion to suppress. The first assignment of error is overruled.

*Second Assignment of Error*

{¶18} In the second assignment of error, Thomas claims that he was unduly prejudiced by the consolidation of the two cases for trial. He maintains that the joinder was prejudicial because the offenses were unrelated, occurred in different years, and the evidence was weak. He asserts that the "cumulative effect" of hearing about all of Thomas' "other bad acts" was inflammatory to the jury.

{¶19} Crim.R. 13 governs the joinder of indictments and provides, in relevant part: "The court may order two or more indictments * * * to be tried together, if the offenses * * * could have been joined in a single indictment * * *." Crim.R. 14 governs relief from prejudicial joinder and provides: "If it appears that a defendant or the state is prejudiced by * * * such joinder for trial together of indictments * * * the court shall order an election or separate trial * * * or provide such other relief as justice requires."

{¶20} The Ohio Supreme court has often held that "joinder and the avoidance of multiple trials is favored for many reasons, among which are conserving time and expense, diminishing the inconvenience to witnesses and minimizing the possibility of incongruous results in successive trials before different juries." The burden to show prejudice from joinder is upon the defendant who claims the error. *State v. Brooks* (1989), 44 Ohio St.3d 185, 193, 542 N.E.2d 636. The Ohio Supreme Court has held that "[a] defendant claiming error in the trial court's refusal to allow separate trials of multiple charges under Crim.R. 14 has the burden of affirmatively showing that his rights were prejudiced; he must furnish the trial court with sufficient information that it can weigh the considerations favoring joinder against the defendant's right to a fair trial, and he must demonstrate that the court abused its discretion in refusing to separate the charges for trial." *State v. Torres* (1981), 66 Ohio St.2d 340, 421 N.E.2d 1288, at the syllabus; *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, ¶ 166.

{¶21} When a defendant claims that he was prejudiced by the joinder of multiple offenses, a court must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct. *State v. Schaim* (1992), 65 Ohio St.3d 51, 59, 600 N.E.2d 661, 668. If the evidence of other crimes would be

admissible at separate trials, any "prejudice that might result from the jury's hearing the evidence of the other crime in a joint trial would be no different from that possible in separate trials," and a court need not inquire further. *Id,* quoting *Drew v. United States* (1964), 331 F.2d 85, 90.

**{¶22}** Thomas was indicted in September, 2010 for four counts of drug trafficking, three counts of drug possession, and two counts of having a weapon while under disability. In February, 2011, he was again indicted for one count of drug trafficking and one count of engaging in a pattern of corrupt activity. During the drug trafficking offense in the 2011 case, Thomas made statements about the charges in the 2010 case which were recorded and could have been used as evidence in both cases had they been tried separately. (See State's Ex. 57.) Additionally, the engaging in a pattern of corrupt activity count in the 2011 case encompassed the dates of violations of the drug activities alleged in the 2010 case and those allegations were some of the predicate acts for the engaging charge. As such, the evidence of drug activity in the 2010 case could have been presented as evidence of the engaging in a pattern of corrupt activity charge in the 2011 case.

**{¶23}** Inasmuch as the evidence in both cases could have been presented at separate trials on the indictments, it was admissible at a single, consolidated trial. Also, the evidence of each crime in each indictment was simple and distinct, involving controlled drug buys of certain amounts of crack cocaine on certain

days, drug possessions of certain amounts on certain days, and weapons possessions of certain weapons on certain days. Cases of this nature and with similar types of evidence have been found to be properly joined. See, e.g., T*orres*, *supra.*

{¶24} Furthermore, the cases and their individual counts were presented to the jury as simple and distinct counts. The trial court instructed the jury to consider each count in each indictment as a "separate and distinct matter" and to do so uninfluenced by any of the other counts. (Trial Tr. Vol. 5, pp. 593-594, 614.)

{¶25} Thomas has not demonstrated that the trial court abused its discretion when it permitted the joinder of the two cases. The second assignment of error is overruled.

*Third Assignment of Error*

{¶26} In the third assignment of error, Thomas argues that the evidence presented at trial did not support a conviction as to the items found in the storage unit, specifically the cocaine, the cash, and the weapon.[3] He asserts that there was "simply no evidence" to support a finding that Thomas possessed the items in the storage unit and that the jury "lost its way" when it convicted him. Thomas' arguments are based on the assertion that he was not the lessor of the storage unit,

---

[3] Thomas' assignment of error specifies "Counts V and VII," however, his arguments pertaining to the cocaine , cash and weapon found in the storage unit and the weapon are actually applicable to Count V and Count VI. Count VII involves the possession of a lesser amount of cocaine on a different date.

that he had "less than two minutes access" to the unit, and that there were documents belonging to other persons that were found in the storage unit.

{¶27} The assignment of error argues both that the verdicts pertaining to two of the counts were against the manifest weight of the evidence and also that there was insufficient evidence to support those verdicts. The Ohio Supreme Court has addressed the differences in the two standards:

> The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. *Id.* at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. *Id.* at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive-the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. *Id.* at 387, 678 N.E.2d 541. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.* at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

*State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25.

{¶28} A challenge to the sufficiency of the evidence requires us to construe the evidence, and all reasonable inferences, in favor of the prosecution. *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492, 503. And, although the

appellate court acts as a "thirteenth juror" in a manifest-weight review, it still must give due deference to the findings made by the fact-finder. *State v. Thompson* (1998), 127 Ohio App.3d 511, 529, 713 N.E.2d 456. The fact-finder, being the jury, occupies a superior position in determining credibility. *Id.*

{¶29} Count 5 is a charge of possession of cocaine (500-1000 grams) and count 6 is a charge of having a weapon while under disability. The cocaine and weapon at issue in these counts were located in a storage unit located at Gossard's on Harding Highway. The trial court advised the jury on the legal definition of "possession" according to the law as set forth in R.C. 2901.21(D)(1), R.C. 2925.01(K), Ohio Jury Instructions, and case law on constructive possession.

> Possess means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found.
>
> Possession is a voluntary act if the possessor knowingly procured or received the controlled substance, or was aware of his control thereof, for a sufficient period of time to have ended his possession. A person has possession when he knows that he has the object on or about his person or property or places it where it is accessible to his use or direction and he has the ability to direct or control its use.
>
> Possession can be either actual or constructive. Constructive possession exists when a person is able to exercise control over the contraband, even if that person does not physically possess it. Constructive possession can be shown through circumstantial evidence.

(Trial Tr. Vol. 5, 599-600.)

{¶30} Although Thomas' brief argues there was negligible evidence to connect him with the storage unit, the testimony of several witnesses contradicts this assertion. Michelle Thomas, the Appellant's aunt (hereinafter, "the Aunt"), testified that he asked her to rent a storage unit for him and that she did. (Trial Tr. Vol. 4, p. 387.) She testified that the unit was located at Gossard's on Harding Highway. (*Id.* at p. 388.) The Aunt further testified that she never had any keys to the unit, that Thomas had all the keys, and that he was the only person she knew who used the storage unit. (*Id.* at pp. 389-390.) The Aunt testified that she assumed the Appellant paid for the unit because she never received a bill, even though her address was given to rent the unit. *Id.* An investigator testified that he learned that a male matching Appellant's description had been making the rental payments on the storage unit. (Trial Tr. Vol. 2, p. 358.)

{¶31} Investigator Andrew Johnson testified that he had seen Thomas at that location, using the passcode to enter the lot and then using a key to open unit #55, where the contraband was located. (Trial Tr. Vol. 2, 356-357.) He further testified that he observed Thomas take something out of the trunk of his vehicle, the same vehicle that had been used in four previous drug buys, and appear to carry a small package and place it in the storage unit, before re-locking the unit and leaving the area. (*Id.* at 357.) There was also paperwork inside with Thomas' name, and some belonging to two other relatives of Thomas (one of whom was

deceased.) The storage unit was then immediately placed under surveillance, and no one else was seen using the storage unit or putting anything inside. A search warrant was obtained the same day, and the cocaine, money, and weapon were found inside unit #55.

**{¶32}** Lt. Matt Treglia testified that he found keys on Thomas' key ring that were of the same type of key that were used with the unique type of lock found on the storage unit. (Trial Tr. Vol. 3, pp. 6-7.) Sgt. Brian Leary testified that the stacks of cash located in the storage unit were bundled and secured with small black rubber bands. (*Id.* at p. 13.) When Thomas' apartment on Edgewood was searched, they also located bundles of cash with the same type of black rubber bands around them, and a package of small black rubber bands was located in Thomas' bedroom. (*Id.* at p. 17.)

**{¶33}** Also, State's Exhibit 57, the tape of the wire recording from the January 17, 2011 buy, was admitted into evidence and played for the jury. (Trial Tr. Vol. 4, p. 432.) On that tape, Thomas admitted that the storage unit was his and admitted ownership of the cocaine, although he claimed he didn't know it was in that unit.

**{¶34}** All of this testimony was more than sufficient, when viewed in a light most favorable to the prosecution, to support the findings of guilty on these two counts. Further, this unrefuted testimony, in conjunction with the jury's

ability to see, hear, and evaluate the witnesses' credibility firsthand, does not demonstrate in any way that the jury lost its way and created such a manifest miscarriage of justice that the convictions on those counts should be reversed. Thomas' third assignment of error is overruled.

*Fourth Assignment of Error*

{¶35} In the fourth assignment of error, Thomas cites to several of the trial court's rulings that he claims were in error and caused such substantial prejudice that his convictions should be overturned. Specifically, he complains that: (1) the trial court permitted repeated hearsay testimony concerning various alleged drug activities that was prejudicial; (2) the trial court refused to provide identities and/or records of confidential informants; (3) the trial court did not use Thomas' requested corrupt activity jury instruction; (4) the trial court failed to give a *Howard* instruction when the jury appeared to be deadlocked; and, (5) he claims he was prejudiced by the trial court's failure to return the Dodge Charger to him, despite the dismissal of the criminal forfeiture charges. We shall address each issue separately below.

{¶36} (1) *Alleged Hearsay Admissions*. Thomas points to several places in the trial transcript where he argues a witness was allowed to testify to inadmissible hearsay. The majority of the references refer to the testimony of Investigator Johnson and his responses regarding what the confidential informants told him.

The State argued that the statements were offered to show why the officers did what they did, and that they were not hearsay because they were not being offered for the truth of the matter. The trial court overruled Thomas' attorney's objections.

**{¶37}** "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Generally, hearsay is not admissible unless one of several exceptions to the hearsay rule is applicable. See Evid.R. 802–807. Also, Evid.R. 801(D) specifies certain statements which are not considered hearsay.

**{¶38}** While we agree that the officer's statements concerning what the confidential informants said during the drug buys were offered in the context of describing what occurred, we find that the testimony exceeded what was necessary to explain the officer's actions and included what was being said by the informants. The officer's reiteration of what the confidential informants said went beyond what was necessary to factually describe what occurred during the drug buys and, therefore, it constituted hearsay.

**{¶39}** On appeal, the State argues that the testimony should be admissible because the informants testified at the trial on the matter and were available to be cross-examined. Evid.R. 801(D)(1) does provide that a statement is not hearsay "if (1) the declarant testifies at trial or hearing and is subject to cross examination

concerning the statement * * *." However, this exception is not applicable here because, in addition to the above requirement, *the second part* of this hearsay exclusion requires that one of three additional conditions must be met: the statements must pertain to prior inconsistent statements, Evid.R. 801(D)(1)(a); the statements must pertain to prior consistent statements, Evid.R. 801(D)(1)(b); or, the statements pertain to identification, Evid.R. 801(D)(1)(c).[4] These factors were not applicable to the testimony in question in this trial. Furthermore, the circumstances giving rise to testimony under factors (a) or (b) would ordinarily only be permitted on rebuttal, after the declarant's testimony has come under attack.

{¶40} However, the improper admission of evidence is harmless error where the remaining evidence constitutes overwhelming proof of a defendant's guilt, beyond a reasonable doubt. *State v. Murphy*, 91 Ohio St.3d 516, 555, 2001-Ohio-112, quoting *State v. Williams*, 6 Ohio St.3d 281 (1983), paragraph six of the syllabus. In making a Crim.R. 52(A) harmless error analysis, any error will be deemed harmless if it did not affect the accused's "substantial rights." An error is

---

[4] The entire text of Evid.R. 801(D) states: "A statement is not hearsay if: (1) Prior statement by witness. The declarant testifies at trial or hearing and is subject to cross-examination concerning the statement, and the statement is (a) inconsistent with declarant's testimony, and was given under oath subject to cross-examination by the party against whom the statement is offered and subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (b) consistent with declarant's testimony and is offered to rebut an express or implied charge against declarant of recent fabrication or improper influence or motive, or (c) one of identification of a person soon after perceiving the person, if the circumstances demonstrate the reliability of the prior identification."

harmless where there is no reasonable probability that the error contributed to the outcome of the trial. *State v. Brown*, 65 Ohio St.3d 483, 485, 1992-Ohio-61.

{¶41} In this case there was overwhelming evidence to support Thomas' convictions, even without any of the hearsay testimony. The exclusion of the hearsay testimony would not have affected the trial's outcome in any way. The State offered thirty witnesses and more than sixty exhibits in proving its cases against Thomas. There were numerous photographs; there was the testimony of the confidential informants; the tapes of the wires that the informants wore during the drug buys were played for the jury; the officers testified as to what they saw and heard during the drug buys; and there was the evidence, including drugs and money, which was found in the storage unit and at Thomas' apartment. Based on all of the facts in the record, the admission of the hearsay testimony in this case was harmless error.

{¶42} (2) *Disclosure of Confidential Informants' Identities*. Thomas asserts that he was "ambushed" at trial and was unable to properly investigate issues relating to the confidential informants because the State "intentionally withheld" this information until trial and all discovery was sealed or "for counsel only." He argues that the trial court should have granted a continuance in order to investigate these witnesses. (Appellant's Br., p. 23.)

{¶43} While the State acknowledges that information relating to the identification of the confidential informants in this case was designated as "counsel only" when provided in discovery, the record shows that the parties agreed to a resolution that permitted Thomas to review the evidence with his attorney, including the photographs and the recordings from the wires the informants were wearing. (Feb. 4, 2011 Hearing Tr. at pp. 6-8.) This agreement was deemed satisfactory to Thomas at that time and his counsel informed the court that "we have resolved those issues regarding the discovery [with regard to the "counsel only" designation motion]. (*Id.* at p. 6.)

{¶44} The State discussed the agreement on the record, stating:

I indicated to [Appellant's counsel] that I did not have an objection to him showing those photographs and/or playing those wires on the controlled buys to his client. My concern is, and always has been, the distribution of those materials, or the duplication of those materials and making their way into the community.

So again, I told him [I had no] problem with him sitting down with his client and playing those or showing those, although I just want to be clear, they still shouldn't be duplicated and no copies should be provided to the defendant, but I have no problem with him seeing those or listening to those.

(*Id.* at p. 7.)

{¶45} Appellant's counsel again replied, "That resolves the problem, your honor, it does." (*Id.*) Furthermore, there was information obtained from the wire that Thomas knew who the confidential informants were prior to this February 4,

2011 agreement. (See State's Ex. 57.) The record disproves Thomas' claim that he suffered any prejudice based upon his access to the State's evidence.

{¶46} (3) *Jury Instruction pertaining to corrupt activity.* Next, Thomas argues that the trial court erred by not giving his requested instruction on the definition of an enterprise for purposes of engaging in a pattern of corrupt activity. This Court has previously stated that:

> It is well settled that a criminal defendant is entitled to a complete and accurate jury instruction on all issues raised by the evidence. However, the precise language of a jury instruction is within the trial court's discretion and will not be disturbed absent an abuse of discretion. * * * Viewing the instructions in their totality, if the law is clearly and fairly expressed, a reviewing court should not reverse a judgment based upon an error in a portion of a charge. Furthermore, there is a strong presumption in favor of the adequacy of jury instructions. Instructions which, in their totality, are sufficiently clear to permit the jury to understand the relevant law shall not be the cause of a reversal upon appeal.

(Internal citations omitted.) *State v. Wegmann*, 3d Dist. No. 1-06-98, 2008-Ohio-622, ¶¶ 103-104.

{¶47} The jury instructions in question were based upon the Ohio Jury Instructions, Section 523.32, which cites to R.C. 2923.31(C). Further, the instruction requested by Thomas did not accurately state the law in Ohio, but rather came from a federal case interpreting the federal corrupt activity statute. As the trial judge pointed out, the law in Ohio is that "if a defendant has engaged in two or more acts constituting a predicate offense, he or she is engaging in a pattern

of corrupt activity and may be found guilty of a RICO violation." (Trial Tr. Vol. 5, p., 552, citing *State v. Schlosser* (1997), 79 Ohio St.3d 329, 335.)

{¶48} R.C. 2923.31 states, in pertinent part:

(C) "Enterprise" includes any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. "Enterprise" includes illicit as well as licit enterprises.

* * *

(E) "Pattern of corrupt activity" means two or more incidents of corrupt activity, * * * that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event.

{¶49} The trial court's jury instruction definitions for "enterprise" and "pattern of corrupt activity" followed the language in R.C. 2923.31 exactly, word-for-word. (Trial Tr. Vol. 5, pp. 602-603.) Moreover, this Court has previously found instructions very similar to those given in the present case to be without error. See, *State v. Lightner*, 3d Dist. No. 6-08-15, 2009-Ohio-2307. We find no abuse of discretion in the trial court's choice of jury instructions.

{¶50} (4) *No "Howard" instruction to jury.* Thomas next argues that the trial court erred by failing to give a *Howard* charge to the jury, pursuant to *State v. Howard* (1989), 42 Ohio St.3d 18, 537 N.E.2d 188, paragraph two of the syllabus, after the jury sent a note to the trial court inquiring what their options were if they

did not agree. The note read as follows: "If we do not agree on count 1 of [the 2011 case], what are our options? Additional time would not change decision." (Trial Tr. Vol. 5, Court's Ex. 5.)

{¶51} The trial court did not give a *Howard* instruction to the jury, but instead gave them an amended verdict form. Thomas asserts that submitting the revised verdict form to the jury created an inference that the trial court "assumed that the jury had found the Defendant guilty and that their deadlock was over the specifications on the verdict form and not on the determination of guilt or innocence." (Appellant's Br., p. 24.)

{¶52} The trial court discussed how to respond to the jurors' question with both attorneys in detail. (Trial Tr. Vol. 5, pp. 631-637.) The court determined that the jury's question demonstrated ambiguity and did not, at that point in time, warrant a *Howard* charge. The count in question included three parts, (1) guilt or innocence, (2) the amount of cocaine, and (3) the specification. The jury's question did not indicate what part or parts of count one in the 2011 case they could not agree upon. Therefore, the trial court prepared an amended verdict form that was divided into three separate parts, so that each part could be considered separately. It was identical to the original form except there were signature lines after each part. (*Id.* at p. 636.) Shortly thereafter, the jury reached a verdict, finding Thomas guilty of possession of cocaine, but not reaching any consensus on

the part specifying the amount, thereby making the offense a felony of the fifth degree.

**{¶53}** The instruction formulated by *State v. Howard* is to be given to a jury when it has been determined that the jury is deadlocked in its decision. *State v. Gary*, 3d Dist. No. 5-99-51, 2000-Ohio-1679, citing *State v. Minnis* (Feb. 11, 1992), Franklin County App. No. 91AP-844. There is no bright line rule that may be used to determine when a jury is deadlocked and when the supplemental charge should be read to the jury. *Id.* The decision on whether to give a *Howard* charge is reviewed under an abuse of discretion standard. *State v. Shepard*, 10th Dist. No. 07AP-223, 2007-Ohio-5405, ¶ 11. *See, also, State v. Gapen*, 104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E.2d 1047, ¶¶ 127-128.

**{¶54}** In this case, the trial court determined that the jury's question was ambiguous because it was asking what to do "if" they could not reach a decision. The court believed the jury may have had some confusion about the mutli-part count. Rather than immediately give a *Howard* charge, the trial court, in its discretion, attempted to clarify the matter for the jury. The amended verdict form given to the jury was an appropriate statement of the law and merely simplified the issues the jury had to consider. We do not find that the trial court's decision was unreasonable, arbitrary, or unconscionable in any way, nor did Appellant demonstrate any prejudice.

{¶55} (5) *Forfeiture Specification as to the 2006 Dodge Charger.* The State dismissed the criminal forfeiture specifications pertinent to this vehicle. The issue was moot because the vehicle had already been forfeited pursuant to a civil forfeiture action. Thomas does not specify how this dismissal was prejudicial to his conviction, nor do we find any merit in the argument.

{¶56} Based on all of the above, we do not find any errors in the multiple decisions of the trial court that Thomas has challenged in this assignment of error. Therefore, the fourth assignment of error is overruled.

*Fifth Assignment of Error*

{¶57} In the final assignment of error, Thomas claims that the trial court erred in sentencing him because he claims that he was improperly convicted and sentenced on multiple counts for the same act. He also asserts that the imposition of consecutive sentences was improper because Thomas was not granted a continuance in the sentencing in order to allow him to present mitigating evidence. He claims that his sentence was unduly harsh and contrary to law. And finally, he claims that the effect of the recently enacted House Bill 86 should require resentencing because the penalties for crack cocaine convictions have changed, as well as the standards for the imposition of mandatory sentences.

{¶58} In his first argument, Thomas asserts that he should not have been sentenced on the corrupt activity count in addition to the underlying counts for

trafficking that constituted the basis for the corrupt activity charge. He asserts that this can be construed as sentencing him on multiple counts for the same act, i.e., allied offenses of similar import, and that he could only be convicted of one. He maintains that he "has been subjected to double jeopardy by the multiple convictions." (Appellant's Reply Br., p. 8.)

{¶59} This Court has previously addressed this very same issue and has held that convictions for engaging in a pattern of corrupt activity as well as possessions of cocaine (where the possessions were the incidents of corrupt activity utilized to establish an essential element of engaging in a pattern of corrupt behavior), could not be construed to constitute two or more allied offenses of similar import and did not violate the double jeopardy clause. See *State v. Caudill*, 3d. Dist. No. 5-97-35, 1998 WL 833729 (Dec. 2, 1998). Since that decision, the Ohio Supreme Court has modified the test to determine whether offenses are allied offenses of similar import. See *State v. Johnson*, 128 Ohio St.3d 153, 2010–Ohio–6314, 942 N.E.2d 1061. The Twelfth District Court of Appeals has recently considered a case under the newer standard and found that convictions for trafficking in a controlled substance (marijuana) and also for engaging in a pattern of corrupt behavior were not allied offenses. See *State v. Dodson*, 12th Dist. No. 2009-07-1147, 2011-Ohio-6222, ¶¶ 64-69.

{¶60} In *State v. Johnson*, *supra,* the Ohio Supreme Court established a two-part test to determine whether offenses are allied offenses of similar import. Under this test, courts must first determine "whether it is possible to commit one offense and commit the other with the same conduct." *Johnson* at ¶ 48. In making this determination, it is not necessary that the commission of one offense would always result in the commission of the other, but instead, the question is simply whether it is *possible* for both offenses to be committed by the same conduct. *Id*. If it is found that the offenses can be committed by the same conduct, courts must then determine whether the offenses actually were committed by the same conduct. *Id.* at ¶ 49. If both questions are answered in the affirmative, the offenses are allied offenses of similar import. *Id.* at ¶ 50. However, if the commission of one offense will never result in the commission of the other, "or if the offenses are committed separately, or if the defendant has separate animus for each offense," then the offenses are not allied offenses of similar import subject to merger. *Id.* at ¶ 51. The statute, R.C. 2941.25(B), requires a court to examine a defendant's conduct, which is an inherently subjective determination. *Id.* at ¶ 52.

{¶61} In applying the *Johnson* analysis to the case at bar, we agree that it is possible to commit both offenses with the same conduct. However, although possible, under the facts of this case, we find Thomas committed the acts of trafficking in cocaine and engaging in a pattern of corrupt activity with a separate

animus. Engaging in a pattern of corrupt activity requires an additional state of mind from trafficking in drugs to form an enterprise. *See, Dodson* at ¶ 67. Thomas possessed the intent to traffic in drugs, which does not require him to form an enterprise. Thomas formed a relationship with different suppliers and, over a period of time spanning several years, continued to operate his enterprise of bringing drugs into Lima, and distributing them. Furthermore,

> [W]hen looking at the intent of the General Assembly, the enactment of R.C. 2923.32 was to criminalize the pattern of criminal activity, not the underlying predicate acts. State v. Dudas, 2009–Ohio–1001 at ¶ 47. This intent is further reinforced by the purpose articulated in the federal RICO statute, which R.C. 2923.31 et seq. is patterned after. State v. Thrower (1989), 62 Ohio App.3d 359, 369. The purpose of the federal RICO statute includes "providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime." Id. at 377 [citation omitted.] If the purpose of the statute is to provide enhanced sanctions, this purpose is furthered by not merging trafficking in [drugs] and engaging in a pattern of corrupt activity in order to provide an enhanced sanction.

*Dodson* at ¶ 68. See, also, *State v. Dudas*, 2009-Ohio-1001, at ¶ 48. Considering Thomas' separate animus for trafficking in cocaine and engaging in a pattern of corrupt activity, and considering the intent of the General Assembly in the enactment of R.C. 2923.32, we do not find that his separate offenses are subject to merger.

{¶62} Furthermore, courts that have reviewed whether double jeopardy is applicable in circumstances such as this have consistently found that it is not. *See,*

*e.g.*, *State v. Caudill*; *State v. Dodson*, ¶¶ 27-34; *State v. Dudas*, ¶ 48 ("Relying on the purpose of RICO and principles of double jeopardy, numerous federal courts have held that double jeopardy does not bar a RICO conviction and a separate conviction and sentence on the predicate offense.")

{¶63} In the next sentencing issue raised by Thomas, he asserts that the imposition of consecutive sentences was unduly harsh and that he was denied the opportunity to present mitigating evidence.

{¶64} Ever since the Ohio Supreme Court's ruling in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶37. Courts, nevertheless, are still required to comply with the sentencing laws unaffected by *Foster*, such as R.C. 2929.11 and 2929.12, which require consideration of the purposes and principles of felony sentencing and the seriousness and recidivism factors. *Mathis* at ¶38. However, a sentencing court does not have to make any specific findings to demonstrate its consideration of those general guidance statutes. *Foster* at ¶42.

{¶65} In *State v. Bates*, the Ohio Supreme Court recognized that the decision in *Foster* left no specific statute in place to govern the imposition of

consecutive sentences beyond the basic statutes regarding the "purposes and principles of sentencing." 118 Ohio St.3d 174, 2008-Ohio-1983, 887 N.E.2d 328, ¶18. The Court held that common-law sentencing presumptions were reinstated, giving trial judges "the discretion and inherent authority to determine whether a prison sentence within the statutory range shall run consecutively or concurrently." *Id.* at ¶18–19; *State v. Hodge*, 128 Ohio St.3d 1, 4, 2010-Ohio-6320, 941 N.E.2d 768, 772, ¶12.

{¶66} In *State v. Hodge,* the Ohio Supreme Court restated its previous holdings concerning a trial court's discretion to impose consecutive or maximum sentences:

> We reaffirmed Foster and Bates in State v. Elmore, 122 Ohio St.3d 472, 2009-Ohio-3478, 912 N.E.2d 582, holding that a trial court has the discretion to impose consecutive sentences in the wake of those decisions and that despite the severance of the statutory presumptions, a trial court is not required by the rule of lenity to impose minimum or concurrent sentences. Id. at paragraph two of the syllabus and at ¶36–41.
>
> In reliance on these decisions, many defendants in Ohio have been sentenced by trial judges who have exercised their discretion to impose consecutive sentences without applying any of the statutes severed in *Foster,* including those regarding consecutive sentencing.

*Hodge*, at ¶¶13-14.

{¶67} In the case at bar, a review of the record indicates that the trial court followed the procedures set forth in R.C. 2929.19 and considered the statutory guidelines in sentencing Thomas. Although the trial court was not required to set

forth its specific findings, the record establishes that the trial court did indeed consider the relevant factors from R.C. 2929.11 R.C. 2929.12 in sentencing Thomas. The trial court found that the offenses were committed as part of an organized criminal activity or for hire; that the recidivism factors showed that he had a previous history of convictions as an adult; that Thomas has not been rehabilitated to a satisfactory degree; and that he has not responded favorably to sanctions previously imposed. (Trial Tr. Vol. 5, pp. 654-655.)

{¶68} The trial court exercised its discretion and declined to postpone sentencing until the following week for several reasons: a pre-sentence investigation was not needed because many of the counts required mandatory prison time and community control was not an option; anyone who wanted to be there knew the that the potential existed for a jury verdict that day and had the opportunity to be present; there had been disruptions in the court during the trial; and Thomas was given the opportunity to speak on his own behalf and be heard, but he declined. (Trial Tr. Vol. 5, pp. 650-654.) We do not find that there was any error in the sentencing hearing nor was the imposition of consecutive sentences contrary to law.

{¶69} And finally, Thomas argues that his sentence was unduly harsh and that he should be resentenced because of changes in Ohio's sentencing statutes as a result of recently enacted House Bill 86.

**{¶70}** The recent changes to felony sentencing in Ohio as a result of H.B. 86 became effective September 30, 2011. Thomas was convicted prior to the effective date of that law and his judgment entry of sentencing was filed April 25, 2011. Therefore, he is not eligible to any modified sentence on the basis of H.B. 86. See *State v. Fields*, 5th Dist. No. CT11-0037, 2011-Ohio-6044, ¶¶ 10-13.

> The provisions of sections 2925.01, 2925.03, 2925.05, and 2925.11 of the Revised Code, and of division (W) of section 2929.01 of the Revised Code, in existence prior to the effective date of this act shall apply to a person upon whom a court imposed sentence prior to the effective date of this act for an offense involving marihuana, cocaine, or hashish. *The amendments* to sections 2925.01, 2925.03, 2925.05, and 2925.11 of the Revised Code, and to division (W) of section 2929.01 of the Revised Code, that are made in this act *do not apply to a person upon whom a court imposed sentence prior to the effective date of this act for an offense involving marihuana, cocaine, or hashish.*

(Emphasis added.) Am.Sub.H.B. No. 86, Section 3. Based upon the express language of the legislation, the statutory modifications are not applicable to a defendant "upon whom a court imposed sentence prior to the effective date of this act for an offense involving * * * cocaine * * *." Therefore, any changes in the sentencing statutes are not applicable to Thomas. Based on all of the above, we find that the trial court did not err in sentencing Thomas. The fifth assignment of error is overruled.

{¶71} Having found no error prejudicial to the Appellant herein in the particulars assigned and argued, we affirm the judgments of the trial court.

***Judgments Affirmed***

**PRESTON and ROGERS, J.J., concur.**

**/jlr**