[Cite as *State v. Mora*, 2020-Ohio-5455.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 20CA0023-M |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DONALD E. MORA | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 19CR0439 |

DECISION AND JOURNAL ENTRY

Dated: November 30, 2020

SCHAFER, Judge.

{¶1} Defendant-Appellant, Donald Mora, appeals from the judgment of the Medina County Court of Common Pleas. This Court reverses.

I.

{¶2} Just after 2:30 a.m., a group of four individuals set out to break into a VFW Post in Columbia Station ("the VFW") to steal any money kept on-site. The group consisted of Mora, his wife, his long-time acquaintance (A.V.), and a friend of the acquaintance (R.F.). A.V. drove the group to the VFW and waited in his truck while Mora, his wife, and R.F. approached the establishment on foot. Although Mora's wife thought she had a working set of keys for the establishment, the locks recently had been changed. She, Mora, and R.F. were unable to break in using the keys and soon abandoned their efforts. After a brief discussion among the members of the group, A.V. drove them to a second location.

{¶3} At the Fraternal Order of Eagles in Columbia Station ("the Columbia Station Eagles"), Mora and R.F. broke through an outside door while A.V. remained in his truck with Mora's wife. Their forced entry triggered an alarm, so they only spent a few minutes inside. After several attempts to kick through a deadbolted office door, the two ran back to the truck. Once again, the group left emptyhanded.

{¶4} After weighing their options, the group decided to try a third location. Mora directed A.V. to drive to Wadsworth where another Fraternal Order of Eagles was located ("the Wadsworth Eagles"). At the Wadsworth Eagles, Mora successfully broke in and took a safe that the establishment kept on-site. The group then took the safe to A.V.'s home, used a grinder to open it, and split its contents. A.V. was apprehended about two weeks later, and his arrest and additional investigation led the police to Mora and the others.

{¶5} A grand jury indicted Mora on three counts of breaking and entering, two counts of vandalism, one count of grand theft, one count of theft, one count of safecracking, and one count of engaging in a pattern of corrupt activity. Mora pleaded guilty to eight of his counts and requested a jury trial on his ninth count for engaging in a pattern of corrupt activity. A jury found him guilty on that count, and the court sentenced him to a total of eleven years in prison.

{¶6} Mora now appeals from the trial court's judgment and raises two assignments of error for our review. Because his second assignment of error is dispositive of the appeal, we reorder the assignments of error.

II.

**Assignment of Error II**

**The jury's verdict of guilty is not supported by sufficient evidence. The trial court erred in denying the Appellant's motion for acquittal.**

{¶7} In his second assignment of error, Mora argues that the trial court erred when it overruled his motion for acquittal, as the State set forth insufficient evidence that he engaged in a pattern of corrupt activity. We agree.

{¶8} This Court reviews the denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence. *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33. A challenge to the sufficiency of a criminal conviction presents a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. After such an examination and taking the evidence in the light most favorable to the prosecution, we must decide whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶9} R.C. 2923.32 defines the offense of engaging in a pattern of corrupt activity. The statute forbids any person "associated with" an enterprise from "conduct[ing] or participat[ing] in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity * * *." R.C. 2923.32(A)(1). It, therefore, requires the State to prove "'both the existence of an "enterprise" and the connected "pattern of racketeering activity."'" *State v. Beverly*, 143 Ohio St.3d 258, 2015-Ohio-219, ¶ 7, quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981).

{¶10} "The definition of 'enterprise' is remarkably open-ended." *Beverly* at ¶ 8. It includes "any individual * * * or group of persons associated in fact * * *." R.C. 2923.31(C). If people "'associate[] together for a common purpose of engaging in a course of conduct[,]'" then

they are an association-in-fact enterprise. *Beverly* at ¶ 9, quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981).

{¶11} To establish a "pattern of corrupt activity," the State must set forth evidence of "two or more incidents of corrupt activity * * * that are related to the affairs of the same enterprise * * *." R.C. 2923.31(E). The incidents cannot be "isolated" or "so closely related to each other and connected in time and place that they constitute a single event." *Id.* That is because R.C. 2923.32 is designed to impose "cumulative liability." *State v. Schlosser*, 79 Ohio St.3d 329, 335 (1997). "The intent of [the statute] is '"to criminalize the pattern of criminal activity, not the underlying predicate acts."'" *State v. Miranda*, 138 Ohio St.3d 184, 2014-Ohio-451, ¶ 13, quoting *State v. Thomas*, 3d Dist. Allen Nos. 1-11-25, 1-11-26, 2012-Ohio-5577, ¶ 61, quoting *State v. Dodson*, 12th Dist. Butler No. 2010-08-191, 2011-Ohio-6222, ¶ 68. That pattern "'must include both a relationship and continuous activity, as well as proof of the existence of an enterprise.'" *Miranda* at ¶ 13, quoting *State v. Dudas*, 11th Dist. Lake Nos. 2008-L-109, 2008-L-110, 2009-Ohio-1001, ¶ 46. One does not violate the statute "merely [by] committing successive or related crimes * * *." *Schlosser* at 333. The State must show that a defendant "voluntarily connected to [a] pattern [of corrupt activity] and performed at least two acts in furtherance of it.'" *Id.* at 334, quoting *United States v. Palmeri*, 630 F.2d 192, 203 (3d Cir.1980).

{¶12} As noted, Mora pleaded guilty to each of the offenses underlying his charge of engaging in a pattern of corrupt activity. Thus, it is undisputed that he participated in the break-ins at the VFW, the Columbia Station Eagles, and the Wadsworth Eagles. The State produced evidence that the VFW break-in occurred just after 2:20 a.m., the Columbia Station Eagles break-in occurred just after 2:45 a.m., and the Wadsworth Eagles break-in occurred just after 3:45 a.m. Surveillance footage from each of the locations confirmed the exact time of each break-in.

{¶13} Of the three individuals who broke into the foregoing establishments with Mora, A.V. was the only one who testified against him at trial. He testified that he had known Mora for more than 25 years, but the two rarely socialized and spoke only sporadically. Two days before the break-ins, Mora contacted A.V. and asked whether he would be interested in breaking into an establishment and splitting the proceeds. Mora indicated that he had the keys to the establishment, so A.V. agreed to participate. The two planned for the break-in to occur that night, but a last-minute event caused A.V. to be unavailable. The two spoke later that evening and agreed they would meet in two days to perform the break-in.

{¶14} The day of the break-in, A.V. exchanged a series of text messages with either Mora or Mora's wife regarding the break-in. He testified that the messages were sent from the wife's cell phone, but it was not clear to him whether they were from her or Mora. In any event, the messages verified some of their plans for the break-in and instructed A.V. to procure ski masks, gloves, and a grinder to open any safe they might encounter. During the actual break-in, A.V. was to serve as the getaway driver.

{¶15} A.V. testified that his friend, R.F., was a last-minute addition to the group because he happened to be visiting shortly before A.V. was scheduled to meet Mora. When R.F. heard about the break-in, he asked A.V. if he could participate, and A.V. agreed. Though Mora and his wife had met R.F., neither was aware that he would be joining them that evening. A.V. simply brought along R.F. when he left his house and picked them up.

{¶16} A.V. neglected to procure ski masks and gloves ahead of time, so, once he had everyone in tow, he stopped at two gas stations in the Columbia Station area. He testified that he ended up buying hats, goggles, and gloves at the gas stations because no masks were available. He then drove the group to the VFW and remained in his truck while they tried to gain access. He

testified that he waited for them down the street because he did not want anyone to see his truck. Shortly thereafter, R.F. contacted him by phone and told him to pick them up. Once A.V. did so, he learned that the break-in had not been successful.

{¶17} A.V. testified that the group had a brief conversation inside the truck about trying to break into a different establishment. He thought he recalled there having been some discussion of a fallback location when he initially spoke with Mora and/or his wife about the break-in, but he could not remember any of the details about that conversation. He also could not recall exactly who had the idea to drive down the street and try the Columbia Station Eagles. After it was suggested, however, Mora and his wife decided they should try that establishment.

{¶18} A.V. testified that he drove the group to the Columbia Station Eagles and remained inside the truck with Mora's wife while Mora and R.F. went inside. A.V. once again parked his truck elsewhere so that it would not be spotted in the lot. Shortly after he did so, either Mora or R.F. contacted him and told him to come quickly because the alarm had been triggered. He then retrieved the two men, and the group left the scene.

{¶19} Following the second unsuccessful break-in, A.V. testified, Mora was against trying a third time. His wife persisted that they still did not have any money, however, and convinced Mora to try again. A.V. indicated that there had never been a plan to break into a third establishment, but that Mora ultimately directed him to drive to Wadsworth where the Wadsworth Eagles was located. Once there, Mora entered the establishment by himself and emerged not long after with a safe. The safe was loaded onto the truck, and A.V. drove the group to his home in Parma.

{¶20} Once the group arrived at A.V.'s home, they waited until his teenage son left for school and his girlfriend woke up his younger child. He and Mora then used a grinder that A.V.

had in his garage to cut a hole in the back of the safe. The group split the contents of the safe before A.V. drove them home. He later disposed of the safe by himself.

{¶21} A.V. confirmed that he and Mora only planned the first break-in that occurred (and possibly a fallback location). He testified that there was never any plan to conduct additional break-ins. Indeed, he stated that, had the break-in at the VFW been successful, the group likely would not have driven to either the Columbia Station Eagles or the Wadsworth Eagles. According to A.V., the group simply wanted to find money, split it, and go their separate ways.

{¶22} This Court is mindful that we must construe evidence in a light most favorable to the State in resolving a sufficiency challenge. *See Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus. Even doing so here, however, we simply cannot conclude that the State proved, beyond a reasonable doubt, that Mora engaged in a pattern of corrupt activity. Mora and his cohorts may well have formed an enterprise, as they associated with one another for the common purpose of breaking and entering. *See Beverly*, 143 Ohio St.3d 258, 2015-Ohio-219, at ¶ 8 (defining "enterprise" and noting that the definition is "remarkably open-ended"). Yet, the State's evidence fell short of demonstrating that they engaged in a "pattern of corrupt activity." R.C. 2923.32(A)(1). The evidence showed that Mora and the others planned to break into one establishment and, possibly, to break into a second establishment if the first proved unsuccessful. The group specifically targeted the VFW because they believed they had keys to the establishment. Only after that plan failed did they settle upon two additional establishments. Moreover, there was evidence that the members of the group initially disagreed about that decision. A.V. specifically testified that Mora did not want to try a third location until his wife convinced him otherwise.

{¶23} The evidence showed that the three break-ins occurred within a short-time frame with little-to-no advanced planning. The initial break-in was discussed only two days before it

occurred, and the locations of the second and third break-ins were decided on the spot when the group reconvened in A.V.'s truck. While the corrupt activity statute does not require evidence of any specific length of association between members of an enterprise, it is intended ""'"to criminalize the pattern of criminal activity, not the underlying predicate acts."'"" *Miranda*, 138 Ohio St.3d 184, 2014-Ohio-451, at ¶ 13, quoting *Thomas*, 2012-Ohio-5577, at ¶ 61, quoting *Dodson*, 2011-Ohio-6222, at ¶ 68. The legislature never "intended to make a situation such as three robberies committed by the same person a [] violation [of R.C. 2923.32]." *Schlosser*, 79 Ohio St.3d at 334. Were it otherwise, every crime spree involving more than one individual would violate the statute. *See Miranda*, 138 Ohio St.3d 184, 2014-Ohio-451, at ¶ 13, *Dudas*, 2009-Ohio-1001, at ¶ 46 (corrupt activity statute requires proof of conduct "'independent of the conduct required to commit [the underlying predicate offenses]"). The State's evidence failed to demonstrate that Mora and his cohorts were engaged in "'both a relationship and continuous activity * * *.'" *Miranda* at ¶ 13, quoting *Dudas* at ¶ 46. Rather, it showed that they engaged in "isolated" incidents or incidents that were "so closely related to each other and connected in time and place that they constitute[d] a single event." R.C. 2923.31(E). Because the State failed to set forth sufficient evidence in support of Mora's conviction for engaging in a pattern of corrupt activity, we must conclude that the trial court erred when it denied his motion for acquittal. As such, Mora's second assignment of error is sustained.

## Assignment of Error I

**The trial court abused its discretion and committed prejudicial error when it failed to give the Defendant Appellant's requested jury instruction for pattern of corrupt activity.**

{¶24} In his first assignment of error, Mora argues that the trial court abused its discretion when it refused to issue the jury his requested instructions. In light of our resolution of his second

assignment of error, his first assignment of error is moot, and we decline to address it. *See* App.R. 12(A)(1)(c).

III.

{¶25} Mora's second assignment of error is sustained. His first assignment of error is moot. The judgment of the Medina County Court of Common Pleas is reversed, and the cause is remanded for the court to enter a judgment of acquittal with respect to Mora's conviction for engaging in a pattern of corrupt activity.

Judgment reversed,<br>and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

JULIE A. SCHAFER
FOR THE COURT

CALLAHAN, P. J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

DAVID C. SHELDON, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.